Bradley SCHULBERG, Respondent,

v.

COMMISSIONER OF PUBLIC
SAFETY, Appellant.

No. C7-85-2198.

Court of Appeals of Minnesota.

May 20, 1986.

Mark A. Olson, Burnsville, for respondent.

Hubert H. Humphrey, III, Atty. Gen., Jeffrey S. Bilcik, Sp. Asst. Atty. Gen., St. Paul, for appellant.

Considered, and decided by WOZNIAK, P.J., and HUSPENI and RANDALL, JJ., without oral argument.

## OPINION

RANDALL, Judge.

Respondent's driving privileges were revoked pursuant to the implied consent law. He petitioned for judicial review, and the trial court rescinded the revocation. The Commissioner of Public Safety appeals.

## FACTS

On July 6, 1985, at approximately 2:00 a.m., police officer Thomas Hakala was on duty. He was driving northbound on Cedar Avenue, just north of Trunk Highway 50, on routine patrol, when he observed respondent's vehicle. Hakala testified that the vehicle was driving southbound around a curve. Hakala estimated that it was moving at approximately 65 miles per hour. Hakala turned his squad around and followed the car. The car stopped at a stop sign at Cedar and 50th, and then turned eastbound on 50th. He noticed respondent accelerating rather rapidly as he drove away from a stop sign. Hakala activated his emergency lights and followed the car approximately one-quarter to one-half of a mile before he stopped it.

The officer, who obtained identification from respondent, noticed an odor of alcohol from inside the vehicle, and saw that respondent's eyes were somewhat bloodshot and watery, and his speech was slurred. The officer asked where respondent was going, and respondent said he was going to a friend's house in Farmington. Hakala asked if respondent had been drinking; he said he had attended a wedding reception and had had approximately four beers.

Hakala asked why respondent was in a hurry; respondent stated that he was not; he said he was not speeding. The officer said in his opinion respondent was speeding.

Hakala did not have radar in his squad, although he is a radar operator. He has been driving motor vehicles in Minnesota for approximately 10 years, and has been an officer on traffic patrol for nearly two years. The speed limit in the area was 55 miles per hour, and the officer felt the vehicle approaching him was traveling at approximately 65 miles per hour.

The officer had respondent perform a number of field sobriety tests. Respondent was given a preliminary breath test, which he failed, and then was arrested. Hakala transported respondent to the station where he read him the implied consent advisory and gave him a breath test.

On cross-examination, the officer said he was basing his testimony on his police report. However, the police report did not indicate that respondent was traveling at approximately 65 miles per hour. Hakala conceded that it is easier to gauge the speed of a vehicle when following than one which you are approaching.

Hakala testified on redirect examination that he had an independent recollection of the facts. He also explained that he noted in his police report that respondent was exceeding the speed limit. His independent recollection was that he felt that respondent was going over 55; if he estimated, he would say that he was going somewhere around 65 miles per hour.

Respondent was not issued a citation for speeding. Hakala made the decision to stop respondent by the time his vehicle passed the squad on Cedar.

Respondent also testified at the hearing. He said that he recalled driving on Cedar Avenue, and that he was not speeding. He knew he was not speeding because he did not have a very good driving record, and if he received any more tickets his license would be taken away. He could not afford to take any chances. He testified that he was familiar with the roads and the turns, and reiterated that he was not speeding. He also stated he did not feel he accelerated unreasonably.

When stopped, respondent asked the officer the reason for the stop. The officer said he was speeding. Respondent said he did not think he was, because he had a bad record and there was "no way" he would do so. Respondent had 12 tickets, the majority of which he received from ages 16 through 24; he was 31 at the time of the hearing. He did receive a ticket in April 1985.

Respondent was given a breath test, which he failed with a .11 reading. The Commissioner revoked respondent's driving privileges, and respondent petitioned for judicial review. The trial court found that there was insufficient showing of a valid objective basis to stop respondent's vehicle, and rescinded the revocation of appellant's driving privileges. The Commissioner of Public Safety appeals.

## ISSUE

Did the trial court err in determining that there were insufficient grounds to stop respondent's vehicle?

## ANALYSIS

Appellant Commissioner of Public Safety challenges the trial court's rescission of the revocation of respondent's driving privileges. The trial court based its decision on the finding that there was:

An insufficient finding of a valid objective basis to stop the [respondent's] motor vehicle.

An officer must have a specific and articulable suspicion of a violation before a stop will be justified under the fourth amendment. *Marben v. State, Department of Public Safety*, 294 N.W.2d 697, 699 (Minn. 1980). An actual violation of traffic laws is not necessary.

All that is required is that stop be not the product of mere whim, caprice, or idle curiosity. It is enough if the stop is based upon "specific and articulable

facts which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion". [*Terry v. Ohio*, 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)].

*People v. Ingle*, 36 N.Y.2d 413, 420, 369 N.Y.S.2d 67, 74, 330 N.E.2d 39, 44 (1975) (quoted in *Marben*, 294 N.W.2d at 699). The facts must provide the officer with a reasonable basis for suspecting that the driver committed a crime. *See Blaisdell v. Commissioner of Public Safety*, 381 N.W.2d 849, 850 (Minn.1986); *Olson v. Commissioner of Public Safety*, 371 N.W.2d 552, 556 (Minn.1985).

The facts which the Commissioner argues support the stop in this case are Hakala's claim that the vehicle was traveling over 55 miles an hour, that it accelerated rapidly after stopping, and that it had difficulty negotiating a turn. If these facts were undisputed, a different issue would be presented. *See Berge v. Commissioner of Public Safety*, 374 N.W.2d 730, 732 (Minn. 1985); *Warrick v. Commissioner of Public Safety*, 374 N.W.2d 585, 586 (Minn.App. 1985). The issue would be whether the facts as a matter of law provide an adequate basis to stop. *Warrick*, 374 N.W.2d at 586.

In this case, conflicting oral testimony was presented as to respondent's driving. This is not, as appellant argues, a case in which the issue is whether the officer was mistaken in his belief. *See City of St. Paul v. Vaughn*, 306 Minn. 337, 342, 237 N.W.2d 365, 369 (1975). The trial court was faced with an issue of credibility between driver and officer.

The supreme court was presented with a similar probable cause issue. *Quimby v. State, Department of Public Safety*, 351 N.W.2d 629 (Minn.1984). The deputy testified that Quimby drove too fast, he recognized him as the driver, and concluded he was intoxicated after talking to him. The driver testified he was driving, it was too dark for the officer to have recognized him while he was driving, and he was going slower than the speed limit. The trial court considered the credibility of each

driver and found that the officer had probable cause to believe Quimby was driving the car. The supreme court stated: "The decision was clearly based on the court's finding that [the officer's] testimony was more credible than Quimby's". *Id.* The supreme court noted that Minn.R.Civ.P. 52.01 provides that the findings of a trial court should not be set aside "unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." It held that the lower court's finding of probable cause for the arrest was not clearly erroneous. *Id.* at 632–33.

■ We are confronted with a parallel situation. Here the trial court found the driver's testimony more credible than the officer's. On this record with the officer basing his observation of speeding on only visual sighting of an approaching vehicle in the middle of the night, we will not say that the trial court's determination that there was an insufficient showing of a valid objective basis to stop the respondent was clearly erroneous. Minn.R.Civ.P. 52.-01; *Quimby*.

### DECISION

The trial court was not clearly erroneous when it determined that there was an insufficient showing of a valid objective basis to stop respondent's car, and rescinded the revocation.

Affirmed.