STATE of Minnesota, Respondent,

v.

Lawrence Andrew SAFFEELS,
Appellant.

No. C8–91–2333.

Court of Appeals of Minnesota.

April 28, 1992.

Review Denied June 1, 1992.

Hubert H. Humphrey, III, Atty. Gen., Wm. F. Klumpp, Jr., Asst. Atty. Gen., Shari L. Johnson, Law Clerk, St. Paul, Gary G. Wollschlager, Martin County Atty., Fairmont, for respondent.

John M. Stuart, State Public Defender, Mark F. Anderson, Ass't State Public Defender, Minneapolis, for appellant.

Considered and decided by HARTEN, P.J., and PARKER and CRIPPEN, JJ.

## OPINION

HARTEN, Judge.

This appeal is from a judgment of conviction for aggravated robbery. Minn.Stat. § 609.245 (1990). Appellant Saffeels' motion to suppress was denied, and he waived his right to a jury trial and stipulated to the state's evidence. *State v. Lothenbach*, 296 N.W.2d 854, 857–58 (Minn.1980) (meth-

od of expediting appellate review). We affirm.

## FACTS

On January 27, 1990 at about 6:30 p.m., an armed robbery was committed at a motel near the junction of Highway 15 and Interstate I–90 in Fairmont by a man described as a white male, with blond hair and mustache, wearing a stocking cap, a dark ski-type jacket and blue jeans. The motel clerk did not know whether the robber was on foot or had a vehicle.

Officer Peymann was in his squad car in Welcome, seven or eight miles west of Fairmont on I–90. Peymann, who had monitored the dispatch call and heard the description, drove to the Interstate and parked in the median perpendicular to the traffic, his headlights shining onto the westbound lanes of I–90. Peymann's squad car, although not fully marked, had a large reflective shield on its doors and other insignia.

Peymann watched eight or ten cars pass him, their drivers all registering some reaction to his presence. One driver, however, "completely, totally ignored me." This driver, a male with "blondish hair," looked to his right, away from the squad car, as he passed. Peymann followed this car to obtain its license number.

Officer Peymann had to pull within one or two car lengths of Saffeels' car to obtain the license number. Peymann testified that even this tailgating elicited no reaction from the driver. Officer Peymann requested a license check, then drove back to Fairmont and reported what he had seen to Fairmont police. Peymann testified that he did not stop the car because he had no backup available.

After Peymann consulted with other officers in Fairmont, a radio call was sent out to stop the vehicle as a suspect in the armed robbery. Following the stop, a shotgun, bank money bags and the motel clerk's purse were found in the car.

## ISSUE

Was the investigative stop supported by articulable suspicion?

## ANALYSIS

■ In order to "freeze the scene" of a recently committed crime, police may conduct an investigative stop in the vicinity if the applicable factors provide a reasonable, articulable suspicion to justify the stop. *Appelgate v. Commissioner of Pub. Safety*, 402 N.W.2d 106, 108 (Minn.1987). The factors involved are: ⸺

■ the particularity of the description of the offender or the vehicle in which he fled; (2) the size of the area in which the offender might be found, as indicated by such facts as the elapsed time since the crime occurred; (3) the number of persons about in that area; (4) the known or probable direction of the offender's flight; (5) [the] observed activity by the particular person stopped; and (6) [the] knowledge or suspicion that the person or vehicle stopped has been involved in other criminality of the type presently under investigation.

*Id.*

■ Saffeels argues that a consideration of these factors does not support the stop, particularly given the sketchiness of the description, the size of the area involved, and the lack of any information on a vehicle being used. In reviewing trial court rulings on fourth amendment issues, this court accepts the trial court's findings of fact, unless clearly erroneous, but independently applies fourth amendment case law to the facts so found. *State v. Storvick*, 428 N.W.2d 55, 58 n. 1 (Minn.1988).

■ The description given by the motel clerk of a white male with blond hair and certain described clothing was not highly detailed. *See generally* 3 Wayne R. La-Fave *Search and Seizure*, § 9.3(d) at 463 (2nd ed. 1987). However, the particularity of the description is only one factor, which cannot be considered in isolation. The size of the area to be searched affects significantly the adequacy of the description. *See id.* at 469 (size of the area is relevant to the sufficiency of the description).

Saffeels argues that the area and possible directions of flight are too great for this factor to support the stop. However, it is usually the case that an offender could flee in any direction on the compass. What is more important is the "range of possible flight." *Id.* at 468. As LaFave states:

> Of particular significance when an officer at a stakeout sees a vehicle traveling away from the scene of a recent crime, is the fact that *if the offender were to have taken this route* away from the crime he would have arrived at that point at approximately that time.

*Id.* (emphasis added). It is not unlikely that the robber would have taken I–90, the quickest route of escape from the immediate area. Nor is it unreasonable to assume that the robber, if fleeing by car, would have observed the speed limit to avoid detection. Officer Peymann's estimate that the getaway car would have reached his location when it did is not shown to be unreasonable.

The critical fact justifying the stop was Officer Peymann's observation of the driver's reaction to his presence. *See generally Appelgate,* 402 N.W.2d at 108–109 (officer's observation of the suspect is relevant). The trial court's finding on the credibility of this testimony is binding on this court, unless clearly erroneous. *See State v. Storvick,* 428 N.W.2d at 58 n. 1; *Schulberg v. Commissioner of Pub. Safety,* 387 N.W.2d 225, 227 (Minn.App.1986).

Whether avoidance of eye contact with the police justifies suspicion depends on the circumstances of the encounter. *Cf. State v. Johnson,* 444 N.W.2d 824, 825–27 (Minn.1989) (rejecting *per se* rule than an evasive act does not justify an investigative stop). The Ninth Circuit has stated:

> Although routine reliance on lack of eye contact is inappropriate, we also recognize that special circumstances may make innocent avoidance of eye contact improbable and thus a factor contributing to a reasonable suspicion justifying a stop.

*Nicacio v. United States Immigration and Naturalization Serv.,* 797 F.2d 700, 704 (9th Cir.1986).

Some courts have held that avoidance of eye contact is of little or no significance. *See, e.g., United States v. Orona–Sanchez,* 648 F.2d 1039, 1042 (5th Cir.1981) (driver's reaction to police headlights was, along with other factors, unremarkable and not suspicious); *United States v. Pacheco,* 617 F.2d 84, 87 (5th Cir.1980) (avoidance of eye contact "can have no weight whatsoever"). Others have placed more weight on averted glances. *See, e.g., Guam v. Ichiyasu,* 838 F.2d 353, 355–356 (9th Cir.1988) (taxicab passenger's averted gaze properly aroused suspicion, along with other factors, including proximity to scene of recent crime).

Saffeels cites *United States v. Smith,* 799 F.2d 704, 707 (11th Cir.1986), in which the court stated:

> the culminating factor behind Trooper Vogel's decision to stop the car appears, then, to have been the failure of the driver to look at Vogel's patrol car. Such an action is, however, fully consistent with the cautious driving: safety, after all, requires keeping one's eyes on the road. More significantly, to the extent that such an action is suspicious, it in no way gives rise to a *reasonable* suspicion of illegal activity either alone or in combination with the other circumstances surrounding the stop of appellants' car.

*Smith* involved the stop of a car based in part on a drug courier profile. *Id.* at 706. The court stated that the two men "matched a few nondistinguishing characteristics" in the profile. *Id.* at 707. The court concluded the stop was based on an "inarticulate hunch." *Id.* (quoting *Terry v. Ohio,* 392 U.S. 1, 22, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968)).

Saffeels was stopped based on factors serving to focus suspicion more narrowly than a drug courier profile. *See generally Appelgate,* 402 N.W.2d at 108. Moreover, Officer Peymann based his conclusion that avoidance of eye contact was unusual on the behavior of the other motorists passing him, none of whom reacted as Saffeels did.

**432**

Finally, Peymann followed Saffeels' car and verified the significance of Saffeels' non-reaction by further observation. These circumstances were not present in *Smith. Cf. Smith,* 799 F.2d at 706 (trooper followed defendant's car, which began weaving, but stop was based solely on earlier observations).

Two other circumstances also support the stop. In *Appelgate,* significance was given to a driver's overly perfect driving behavior, just as Peymann found Saffeels' driving to be suspiciously overcautious. *See Appelgate,* 402 N.W.2d at 109 (defendant made "prolonged" stops at two intersections). Also, the officer's conduct in not stopping Saffeels immediately, but first checking out his license number, then clearing the stop with another officer, was prudent and cautious. *See Storvick,* 428 N.W.2d at 59 (field investigation leading to warrantless entry and arrest was prudent and cautious).

We have examined the arguments in Saffeels' pro se brief and find them to be without merit. Saffeels refers to a federal court hearing not a part of the record on appeal. He also contends that the recording of the dispatch calls impeaches Officer Peymann's testimony. Even if this court could substitute its judgment of witness credibility for that of the trial court, the dispatch transcript does not effectively impeach Peymann's testimony.

### DECISION

The stop of appellant's car was supported by reasonable, articulable suspicion.

Affirmed.