*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2012).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A13-1768**

Bjorn Knudsen, petitioner,
Respondent,

vs.

Commissioner of Public Safety,
Appellant

**Filed October 6, 2014
Reversed
Peterson, Judge**

Dakota County District Court
File No. 19AV-CV-13-1237

Jeffrey S. Sheridan, Strandemo, Sheridan & Dulas, P.A., Eagan, Minnesota (for respondent)

Lori Swanson, Attorney General, Kristi Nielsen, Assistant Attorney General, St. Paul, Minnesota (for appellant)

Considered and decided by Peterson, Presiding Judge; Reilly, Judge; and Reyes, Judge.

**U N P U B L I S H E D   O P I N I O N**

**PETERSON**, Judge

In this appeal from a district court order that rescinded the revocation of respondent's driver's license under the implied-consent statute, appellant argues that the

district court erred in determining that respondent did not voluntarily consent to a breath test. We reverse.

## FACTS

Dakota County Sheriff's Deputy Jonathan Reimers stopped a vehicle that respondent Bjorn Knudsen was driving at approximately 3:00 a.m., after the vehicle crossed the fog line three times and the center line twice. During the stop, Reimers began to suspect that Knudsen was under the influence of alcohol, and he eventually arrested Knudsen for driving while impaired. Knudsen stipulated that Reimers "conducted an investigation . . . which led him to believe that [Knudsen] was driving while impaired" and that Reimers had probable cause to arrest Knudsen.

Reimers took Knudsen to the Dakota County Jail and read him the standard implied-consent advisory. During the advisory, Knudsen was told that refusal to take a test is a crime. Knudsen said that he understood the advisory and did not wish to consult with an attorney. Reimers offered Knudsen a blood, breath, or urine test. Knudsen agreed to take a breath test, which revealed a .21 alcohol concentration, and appellant Commissioner of Public Safety revoked Knudsen's driver's license under Minn. Stat. § 169A.52, subd. 4(a) (2012).

At the implied-consent hearing on his license revocation, Knudsen challenged only the admissibility of his warrantless breath test in light of *Missouri v. McNeely*, 133 S. Ct. 1552 (2013); he waived all other issues. The district court found that the commissioner failed to prove that Knudsen's consent to alcohol testing was freely and voluntarily given because

2

> [w]hen the officer asked for [Knudsen's] consent to conduct an alcohol concentration search in this case, [Knudsen] had already been placed under arrest, transported from [his] vehicle in a squad car to another secure location, and informed that if [he] refused to provide the requested consent, [he] would be charged with a crime. In addition [Knudsen's] decision making was impaired [by] alcohol which [he] had previously consumed. While [Knudsen] was offered an opportunity to contact counsel to obtain advice regarding [his] decision to consent, no attorney was ever reached and no advice was obtained.

The district court suppressed the evidence obtained from the breath test and rescinded Knudsen's license revocation. The commissioner appeals.

## DECISION

"In reviewing [district] court rulings on [F]ourth [A]mendment issues, this court accepts the [district] court's findings of fact, unless clearly erroneous, but independently applies [F]ourth [A]mendment case law to the facts so found." *State v. Saffels*, 484 N.W.2d 429, 430 (Minn. App. 1992), *review denied* (Minn. June 1, 1992). The United States and Minnesota Constitutions guarantee persons the right to be free from "unreasonable searches and seizures." U.S. Const. amend. IV; Minn. Const. art. I, § 10. Taking a sample of a person's blood, breath, or urine constitutes a search that requires either a warrant or an exception to the warrant requirement. *Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602, 616-17, 619, 109 S. Ct. 1402, 1412-14 (1989); *see also State v. Brooks*, 838 N.W.2d 563, 568 (Minn. 2013) (blood and urine testing), *cert. denied*, 134 S. Ct. 1799 (2014). "[P]olice do not need a warrant if the subject of the search consents." *Brooks*, 838 N.W.2d at 568.

3

"For a search to fall under the consent exception, the State must show by a preponderance of the evidence that the defendant freely and voluntarily consented [to a search]." *Id.* "'Consent' that is the product of official intimidation or harassment is not consent at all." *Florida v. Bostick*, 501 U.S. 429, 438, 111 S. Ct. 2382, 2388 (1991). But

> involuntariness of a consent to a police request is not to be inferred simply because the circumstances of the encounter are uncomfortable for the person being questioned. Rather, it is at the point when an encounter becomes coercive, when the right to say no to a search is compromised by a show of official authority, that the Fourth Amendment intervenes. Consent must be received, not extracted.

*State v. Dezso*, 512 N.W.2d 877, 880 (Minn. 1994). Consent is coerced when a suspect's "will has been overborne and his capacity for self-determination critically impaired." *Schneckloth v. Bustamonte*, 412 U.S. 218, 225-26, 93 S. Ct. 2041, 2047 (1973).

"'Voluntariness' is a question of fact and it varies with the facts of each case." *Dezso*, 512 N.W.2d at 880. In determining whether a person has voluntarily consented to testing for alcohol concentration, a court must consider "the totality of circumstances, including the nature of the encounter, the kind of person the defendant is, and what was said and how it was said." *Brooks*, 838 N.W.2d at 569 (quotation omitted). "[T]he nature of the encounter includes how the police came to suspect [the person] was driving under the influence, their request that he take the chemical tests, which included whether they read him the implied consent advisory, and whether he had the right to consult with an attorney." *Id.* For consent to be voluntary, a reasonable person must feel free to refuse a law-enforcement request. *Dezso*, 512 N.W.2d at 880. Consent must be more

than acquiescence to a claim of lawful authority. *Bumper v. North Carolina*, 391 U.S. 543, 548-49, 88 S. Ct. 1788, 1792 (1968).

In evaluating whether Knudsen consented to testing, the district court did not have the benefit of the supreme court's opinion in *Brooks* because the opinion had not been released when the order rescinding Knudsen's license revocation was issued. The reasoning applied by the district court in this case was largely rejected in *Brooks*, where the driver argued that his consent was coerced and he did not truly have a choice of whether to submit to tests because police told him that if he did not submit, he would be committing a crime. 838 N.W.2d at 570. The supreme court stated that the driver's custodial status was not "dispositive" and that "a driver's decision to agree to take a test is not coerced simply because Minnesota has attached the penalty of making it a crime to refuse the test." *Id*. at 570-71. The supreme court also rejected the driver's argument based on *Bumper*, 391 U.S. at 548-49, 88 S. Ct. at 1792, that the driver's submission to police authority was merely acquiescence and did not amount to actual consent for purposes of Fourth Amendment analysis. *Brooks*, 838 N.W.2d at 571. The supreme court explained that, unlike the homeowner in *Bumper*, who believed that police had a search warrant that she had no right to resist, "the Minnesota Legislature has given those who drive on Minnesota roads a right to refuse the chemical test" that "police are required to honor." *Id*.

Knudsen argues that factual differences between *Brooks* and this case call for a different result. He contends that the circumstances in *Brooks* included that the driver "had been arrested on numerous prior occasions for DWI and was very familiar with the

5

implied consent process, ignored the officers' commands while in custody to the point of being belligerent, and made repeated calls to his attorneys." The circumstances of this case, he argues, "were insufficient to meet the Commissioner's burden of proving free and voluntary consent." But we conclude that, under the *Brooks* totality-of-circumstances test, the evidence that the commissioner presented establishes voluntary consent.

Knudsen conceded that there was probable cause to arrest him on suspicion of driving while impaired. Reimers took Knudsen into custody and read him the implied-consent advisory. Knudsen stated that he understood the advisory and did not wish to consult with an attorney. He agreed to submit to a breath test. There is no evidence that Reimers acted in anything other than a professional manner when reading the implied-consent advisory or did anything to influence Knudsen to take the test. The record does not show that Knudsen's intoxication affected his ability to consent to testing; Knudsen participated appropriately during the police encounter, and, in particular, he stated that he understood the advisory. *See State v. Smallwood*, 594 N.W.2d 144, 155 (Minn. 1999) (affirming district court finding that intoxication did not affect suspect's consent to a car search when the suspect was able to communicate and participate appropriately in police encounter).

Because the evidence does not show that Knudsen's right to say no was compromised by a show of official authority or that his will was overborne and his capacity for self-determination was critically impaired, the district court's finding that Knudsen's consent to testing was not voluntary is clearly erroneous. *See Fletcher v. St.*

6

*Paul Pioneer Press*, 589 N.W.2d 96, 101 (Minn. 1999) (defining findings of facts as clearly erroneous "if the reviewing court is left with the definite and firm conviction that a mistake has been made"); *Grp. Health, Inc. v. Heuer*, 499 N.W.2d 526, 529 (Minn. App. 1993) (stating that notice, which is generally a question of fact to be decided by the fact-finder, becomes one of law when only one inference is possible from undisputed facts). We, therefore, reverse the district court's rescission of Knudsen's license revocation.

Because the consent-to-testing issue is dispositive, we do not address other issues raised by the commissioner.

**Reversed**.