**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Timothy Andrew SMITH, Stephen Lawrence Swindell, Defendants-Appellants.**

**No. 85–3827.**

United States Court of Appeals, Eleventh Circuit.

Sept. 16, 1986.

---

Harrison T. Slaughter, Orlando, Fla., for Smith.

Robert Leventhal, Orlando, Fla., for Swindell.

Paul Moriarty, Asst. U.S. Atty., Orlando, Fla., Thomas E. Booth, Appellate Section/Criminal Div., Dept. of Justice, Washington, D.C., for plaintiff-appellee.

Before KRAVITCH and HATCHETT, Circuit Judges, and TUTTLE, Senior Circuit Judge.

KRAVITCH, Circuit Judge:

The issue in this case is whether the stop of appellants' vehicle was reasonable under the fourth amendment. The district court upheld the stop on the ground that officers had reasonable suspicion that the appellants were smuggling drugs, and denied appellants' motions to suppress. On appeal, the government has abandoned the position that the stop was a valid narcotics stop, and argues instead that the stop was a reasonable investigation of traffic offenses. This ground was rejected by the court below as pretextual. We agree with the district court that the traffic stop rationale must be rejected as pretextual, but disagree with the determination that the stop was a valid drug investigation. Accordingly, we reverse the denial of appellants' motions to suppress.

## BACKGROUND

On the night of June 4–5, 1985, Trooper Robert Vogel of the Florida Highway Patrol was working with the Drug Enforcement Agency on a special operation to intercept drug couriers on Interstate 95. Trooper Vogel was with a DEA agent in a

marked patrol car parked in the median of Interstate 95, its headlights shining into the northbound lanes.

At 3:00 a.m. the appellants drove by in a 1985 white Mercury. Trooper Vogel testified that appellants matched a drug courier profile he relied upon:

> The car was travelling 50 miles per hour. The car was occupied by two individuals who were approximately thirty years of age.

> The car displayed out of state tags. The driver appeared to be driving overly cautious and did not look in our direction as he proceeded past us. The car was traveling at 3:00 o'clock in the morning.

Trooper Vogel testified that, based on these factors, he developed a "reasonable suspicion" that the appellants' vehicle was hauling drugs. He began following the vehicle, and did so for about a mile and a half.

Vogel testified that while following the vehicle, he saw the car "weaving." His exact testimony was that:

> I observed the right side of the wheels of that vehicle cross over the white painted edge line approximately six inches into the emergency lane.

> The vehicle was then brought back into the center of the white [right?] northbound lane. Then the car drifted over to the white painted center line. However, the wheels did not touch or cross over the center line.

> The vehicle then weaved an additional two times before it was stopped.

Trooper Vogel used his flashing lights to pull the vehicle over. He testified that he did not stop the car because it "weaved." Rather, he had determined to make an "investigative stop" of the vehicle from the moment he began pursuit in reliance on the drug courier profile.

Vogel approached the Mercury and asked for license and registration. Appellant Smith, who was the driver, produced a rental contract, which had expired three weeks earlier. Appellant Swindell explained that the car had been leased by his employer. Vogel attempted to verify this by having a dispatcher contact the rental company and crime information centers. At the same time, he asked the dispatcher to summon a drug dog. Additional DEA agents had joined the scene in the meantime, and the dog arrived at 3:40. The dog sniffed the exterior of the car, and indicated that it detected drugs. DEA agent Frank Chisari searched the trunk and found one kilogram of cocaine in a satchel. The DEA agents arrested the appellants, and the appellants were charged with conspiracy to possess cocaine with intent to distribute.

The appellants filed motions to suppress the cocaine found in their vehicle on the ground that the stop of their vehicle was unreasonable. The district court denied the motions, and after a jury trial both appellants were convicted. The sole issue on this appeal is the reasonableness of the initial stop of appellants' vehicle.[1]

## ANALYSIS

The district court found that no traffic violation occurred, and that any "weaving" was only a pretextual reason for the stop.[2]

---

1. The government does not dispute that if the initial stop of the vehicle was not reasonable, then the evidence seized from the trunk is a fruit of the stop and should have been suppressed. The government argues that if the initial stop was valid, Trooper Vogel was justified in holding appellants until they clarified their right to possess the vehicle in light of the expired rental contract. In light of our holding, we need not consider this contention.

2. The district court stated that "the weaving of the car was a pretext for the stop." The court found that the stop was:

not for any traffic infringement because in fact there wasn't. The car was going 50 miles an hour. It was not breaking any traffic laws, and that the reason [weaving?] was only as the result of perhaps the highway patrol car coming up from behind and the driver taking his eyes off of the road and looking at the flashing lights that would cause any normal driver to perhaps weave slightly.

The government contends that the district court's finding that the "weaving" was caused by the flashing lights is clearly erroneous. Trooper Vogel's uncontradicted testimony was that he saw the "weaving" *before* he turned on his flash-

The court determined, however, that the drug courier profile provided adequate grounds for the stop.[3] On appeal, the government does not argue that Trooper Vogel had reasonable suspicion to stop appellants' car based on the drug courier profile. Instead, it relies entirely on an attack on the district court's ruling that the traffic stop rationale was invalid as pretextual.

■ We first consider the district court's determination that the stop was a valid investigation of possible drug activity. Although an officer may conduct a brief investigative stop of a vehicle, *see Delaware v. Prouse,* 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979), such a stop must be justified by specific, articulable facts sufficient to give rise to a reasonable suspicion of criminal conduct, *Terry v. Ohio,* 392 U.S. 1, 27, 88 S.Ct. 1868, 1883, 20 L.Ed.2d 889, 909 (1968); *United States v. Brignoni-Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975). Investigative stops of vehicles are analogous to *Terry*-stops, *Terry, supra,* and are invalid if based upon only "unparticularized suspicion or 'hunch,' " 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909.

Here, relying on a drug courier profile, Trooper Vogel stopped a car because two young men were traveling at 3:00 a.m. in an out-of-state car being driven in accordance with all traffic regulations. Except perhaps for the time of day, the few factors relied upon by Trooper Vogel would likely apply to a considerable number of those traveling for perfectly legitimate purposes along Interstate 95. Yet, that travelers should choose to journey at night—perhaps to avoid the heavier daytime traffic, or to squeeze as much time as possible out of a Florida vacation—does not reasonably provide any more suspicion of criminal activity than do the other factors cited by Trooper Vogel.

The culminating factor behind Trooper Vogel's decision to stop the car appears, then, to have been the failure of the driver to look at Vogel's patrol car. Such an action is, however, fully consistent with cautious driving: safety, after all, requires keeping one's eyes on the road. More significantly, to the extent that such an action is suspicious, it in no way gives rise to a *reasonable* suspicion of illegal activity either alone or in combination with the other circumstances surrounding the stop of appellants' car. Trooper Vogel stopped the car because the appellants matched a few nondistinguishing characteristics contained on a drug courier profile and, additionally, because Vogel was bothered by the way the driver of the car chose not to look at him. Vogel's suspicion therefore was not the result of "reasonable inferences" from "unusual conduct," *Terry,* 392 U.S. at 27, 30, 88 S.Ct. at 1883, 1884, 20 L.Ed.2d at 909, 911, but was instead a classic example of those "inarticulate hunches" that are insufficient to justify a seizure under the fourth amendment. 392 U.S. at 22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.[4]

---

ing lights. We do not believe, however, that this undermines the district court's conclusion that the "weaving" was simply a pretext.

**3.** The district court made no explicit finding that the drug courier profile provided sufficient support for the stop of appellants' vehicle. Although the court relied on this ground in denying appellants' motion to suppress, it stated that it would leave the determination of the legality of the stop to this court. The district court stated:

[T]his court will find that the only probable cause [sic] for the stop is the suspicion based on the drug interdiction program; ... and based on the past experience of the officer, that the suspicion that he had of this vehicle, the time of night, the fact that it was an out-of-state car, the fact that there were two passengers of approximately thirty year old age [sic], the law may find that that is sufficient *and the Court is not going to make that determination whether it is or isn't. We will leave that to the Court of Appeals....* (emphasis added).

**4.** *United States v. Sharpe,* 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985), provides a contrasting example of circumstances sufficient to justify a stop to investigate whether a vehicle is hauling drugs. In *Sharpe,* a DEA agent was on patrol early one morning in an area of coastal North Carolina known for drug trafficking when he spotted a pickup truck traveling in tandem with an automobile. The pickup truck had an attached camper shell and was riding so

That Trooper Vogel's "hunch" about the appellants proved correct is perhaps a tribute to his policeman's intuition, but it is not sufficient to justify, *ex post facto*, a seizure that was not objectively reasonable at its inception. *See id.*, 392 U.S. at 27, 88 S.Ct. at 1883, 20 L.Ed.2d at 909. Because Vogel did not have a reasonable suspicion that the appellants were hauling drugs, the stop cannot be upheld on that ground.[5]

Although no longer contending that the stop of appellants' automobile was justified to investigate for drug trafficking, the government vehemently attacks the district court's finding that the stop cannot be justified as a valid traffic stop. Appellants contend that the stop is completely invalidated by the court's finding that the traffic rationale was a pretext. The government, however, argues that the pretextual basis of a stop does not make the stop unreasonable. It claims that Vogel could have stopped the vehicle to issue a traffic citation or to investigate whether the driver was intoxicated. The government's position is, to say the least, ironic: its agent testified that he became suspicious of the vehicle because it was driven in an overly cautious manner, yet the government now contends that the stop was reasonable because the car was being driven carelessly. Nevertheless, the government's theory that Vogel *could* reasonably have stopped appellants' automobile places the pretext issue squarely before us.

We conclude that neither side has accurately interpreted the applicable law. The appellants are in error in contending that Trooper Vogel's subjective motivation alone invalidates the stop. The government, however, is similarly mistaken in arguing that the seizure was objectively reasonable because Trooper Vogel *could* have stopped the appellants' car based on his suspected safety concerns. So stated, this argument fails to distinguish between the two very different theories upon which the government relies. The government claims, first, that the "weaving" observed by Trooper Vogel constituted a traffic violation, and that Vogel thus had probable cause to stop the car to issue a citation. It argues alternatively that the "weaving" could have given reasonable suspicion of drunk driving, and that Vogel could have stopped the car to investigate.

■ We conclude that Trooper Vogel did not have probable cause to stop the car for a traffic violation. Furthermore, we reject the government's contention that the stop nevertheless was valid because Trooper Vogel *could* have stopped the car to investigate the possibility of drunk driving. We conclude that in determining whether an investigative stop is invalid as pretextual, the proper inquiry is whether a reasonable officer *would* have made the seizure in the absence of illegitimate motivation. Because the evidence suggests that a reasonable officer would not have stopped the appellants without an invalid purpose to obtain evidence of additional criminal activity, we reverse.

■ The government is correct in contending that an objectively reasonable stop or other seizure is not invalid solely be-

that it appeared heavily loaded. The windows of the camper were covered with a quilted material rather than curtains. After following the procession for about twenty miles, the agent called a highway patrol officer to assist in stopping the vehicles. Soon after the marked patrol car appeared, the truck and the automobile attempted to flee by turning onto a campground road and driving at 55 to 60 miles per hour in a 35 mile-an-hour zone.

The Supreme court concluded that all of these factors together, including the evasive action, justified stopping the vehicles to investigate for possible drug activity. The Court cautioned, however, that "[p]erhaps none of these facts,

standing alone, would give rise to a reasonable suspicion ...." *Id.*, 105 S.Ct. at 1573 n. 3.

5. Our decision does not suggest that the drug courier profile relied upon by Trooper Vogel is itself unconstitutional. Rather, we find that the factors cited by Trooper Vogel in this particular stop were insufficient to give rise to a reasonable suspicion of drug activity. While the factors noted by Trooper Vogel might have some statistical correlation to characteristics of drug couriers, they are also descriptive of numerous legitimate interstate travelers. Whether other factors contained in the profile might sufficiently distinguish drug couriers from other travelers we do not today consider.

cause the officer acted out of improper motivation. As the Supreme Court recently stated, "Whether a Fourth Amendment violation has occurred 'turns on an objective assessment of the officer's actions in light of the facts and circumstances confronting him at the time,' and not on the officer's actual state of mind at the time the challenged action was taken." *Maryland v. Macon,* —— U.S. ——, 105 S.Ct. 2778, 2783, 86 L.Ed.2d 370 (1985) (quoting *Scott v. United States,* 436 U.S. 128, 136, 98 S.Ct. 1717, 1722–23, 56 L.Ed.2d 168 (1978)). The resolution of this case thus depends upon whether Trooper Vogel's stop of appellants' car was objectively reasonable.

We can dispose easily of the government's contention that Trooper Vogel was justified in stopping appellants' automobile to issue a citation for traffic violations. The government argues that the "weaving" observed by Vogel constituted reckless driving, Fla.Stat.Ann. §§ 316.029, 316.029(1),[6] or failure to change lanes safely, Fla.Stat.Ann. § 316.089(1).[7] The government claims, in effect, that Vogel had probable cause to stop the appellants, and that the stop was therefore reasonable regardless of any possible invalid purpose. *See United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (motivation of officer irrelevant where search made incident to lawful arrest); *United States v. Hollman,* 541 F.2d 196 (8th Cir. 1976) (motivation irrelevant where stop for probable cause of traffic violation); *cf. United States v. Thompson,* 710 F.2d 1500 (11th Cir.1983) (subjective intent of Coast Guard "immaterial" where inspection made pursuant to plenary authority to make document and safety check), *cert. denied,* 464 U.S. 1050, 104 S.Ct. 730, 79 L.Ed.2d 190 (1984).

We need not now decide when, if ever, a stop for probable cause resulting from an observed traffic violation might be invalid as pretextual, *cf. Robinson,* 414 U.S. at 221 n. 1, 94 S.Ct. at 470 n. 1, 38 L.Ed.2d at 432 n. 1 (leaving open question of validity of search incident to arrest if search is a "departure from established police practice"), for it is clear that there was no probable cause here. The district court expressly found that no traffic violation had occurred. Although the district court did not make a specific finding regarding probable cause of a traffic violation, we conclude that neither of the statutes relied upon by the government applies to one six-inch deviation from the road and slight "weaving" within a single lane of an interstate highway. Indeed, by Trooper Vogel's own testimony of the objective facts, the government's position is untenable: Vogel observed that the car was being driven with an abundance of caution. Because the circumstances were far from "sufficient to warrant a prudent man's believing that the person [stopped] had committed or was committing an offense," *United States v. Bertram,* 719 F.2d 735, 737–38 (5th Cir.1983), probable cause did not exist.

The government's contention that Trooper Vogel could have conducted a *Terry*-stop to investigate the possibility of drunk driving presents a much more difficult issue both legally and factually. We conclude, however, that in determining when an investigatory stop is unreasonably pretextual, the proper inquiry, again, is not whether the officer *could* validly have made the stop but whether under the same circumstances a reasonable officer *would* have made the stop in the absence of the invalid purpose. In reaching this conclusion, we are bound by the decision of the former

**6.** The definition of reckless driving in § 316.029(1) is:

> Any person who drives any vehicle in willful or wanton disregard for the safety of persons or property is guilty of reckless driving.

**7.** Section 316.089(1) provides that:

> A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety.

Fifth Circuit in *United States v. Cruz*, 581 F.2d 535 (5th Cir.1978) (en banc).[8]

In *Cruz*, a deputy sheriff noticed that a vehicle he had just passed on the highway did not follow him over the next hill. After he turned around to find the vehicle, he saw that it was traveling in the opposite direction. He testified that he surmised that the vehicle had made an illegal u-turn and so decided to stop the vehicle to issue a traffic warning. When several of the occupants could not produce documentation regarding their immigration status, the deputy arrested the driver and the occupants for violations of the immigration laws. The former Fifth Circuit held the stop an unreasonable seizure under the fourth amendment because its purported rationale was merely a pretext for an invalid purpose. Finding the testimony of the deputy inherently unbelievable, the court concluded that the deputy did not stop the car because of a possible traffic violation but instead was "hunting for illegal aliens and stopped [the] automobile to inspect its occupants." 581 F.2d at 542.

*Cruz* did not delineate a precise definition of when an investigative traffic stop is invalid as pretextual.[9] A standard for making that determination, however, easily can be derived from the decision. Based on the objective facts, the *Cruz* court did not believe that a police officer would have stopped the car to issue a warning for a possible u-turn. That an officer theoretically *could* validly have stopped the car for a possible traffic infraction was not determinative. Similarly immaterial was the actual subjective intent of the deputy. The stop was unreasonable not because the officer secretly hoped to find evidence of a greater offense, but because it was clear that an officer would have been uninterested in pursuing the lesser offense absent that hope.

In its focus on objective reasonableness rather than on subjective intent or theoretical possibility, the *Cruz* standard is fully consistent with Supreme Court precedent for determining the validity of a *Terry*-stop. As the Court explained in *Terry*:

[I]n justifying the particular intrusion the police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. The scheme of the Fourth Amendment becomes meaningful only when it is assured that at some point the conduct of those charged with enforcing the laws can be subjected to the more detached, neutral scrutiny of a judge who must evaluate the reasonableness of a particular search or seizure in light of the particular circumstances. And in making that assessment it is imperative that the facts be judged against an objective standard: would the facts available to the officer at the moment of the seizure or the search "warrant a man of reasonable caution in the belief" that the action taken was appropriate?

392 U.S. at 21–22, 88 S.Ct. at 1880, 20 L.Ed.2d at 906.

■ In determining the validity of the stop of appellants' automobile by Trooper Vogel, we therefore are not concerned with Trooper Vogel's subjective intent. His actions and his description of the circumstances surrounding the stop are, however, relevant to our inquiry. Thus, while Trooper Vogel's courtroom declaration of motive is intriguing, what turns this case is the overwhelming objective evidence that Vogel had no interest in investigating possible drunk driving charges: he began pursuit before he observed any "weaving" and, even after he stopped the car, he made no investigation of the possibility of intoxication. That he described the vehicle as

---

8. In *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc), this circuit adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

9. *Cruz* did not distinguish between pretextual stops with probable cause and stops based on pretextual suspicion of a lesser offense. Because in this case we do not consider when, if ever, a stop with probable cause might be invalid, the absence of this distinction does not affect our analysis.

being driven with an abundance of caution further indicates that the stop was unrelated to any possible concern with traffic safety. Based on this objective evidence, we conclude that a reasonable officer would not have stopped the car absent an additional, invalid purpose.[10] We therefore agree with the district court that the traffic stop rationale must be rejected as pretextual. The stop was, accordingly, unreasonable, and any evidence obtained from it must be excluded.

By looking to what a reasonable officer *would* do rather than to what an officer validly *could* do, the standard we apply today to determine the validity of an allegedly pretextual investigative stop is supportive of the rationales that make *Terry*-stops reasonable under the fourth amendment. *Terry*-stops are reasonable not only because of the government's interest in investigating and alleviating officers' suspicions of illegal activity but also because of the limited intrusiveness of such stops. 392 U.S. at 26, 88 S.Ct. at 1882, 20 L.Ed.2d at 908–09. To maintain this balance between the competing interests of the government and the individual, each *Terry*-stop must. be both "justified at its inception" and "reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20, 88 S.Ct. at 1879, 20 L.Ed.2d at 905; *see also United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985) (applying *Terry* standard to stop and detention based upon reasonable suspicion of drug possession). If officers were permitted to conduct *Terry*-stops based on what conceivably *could* give rise to reasonable suspicion of minor violations, the necessary connection between a seizure's justification and its scope would inevitably unravel.

The facts of this case suggest the potential for abuse should pretextual *Terry*-stops be permitted. The government contends that the initial stop was justified to investigate possible traffic violations, and that the subsequent detention of the car was justified to determine appellants' authority to drive it. Yet Trooper Vogel summoned a drug dog even *before* he learned that the rental agency could not be contacted. This immediate step to investigate for the presence of drugs indicates the inevitable disjunction between a stop's possible justification and its actual scope if, viewed objectively, the stop is based upon a pretext.[11]

Were we to abandon the rule of *Cruz* —which, of course, this panel cannot do— police officers could easily make the random, arbitrary stops denounced in *Terry*. With little more than an inarticulate "hunch" of illegal activity an officer could begin following a vehicle and then stop it for the slightest deviation from a completely steady course. This possibility was denounced more than 30 years ago by the Florida Supreme Court in a case remarkably similar to the present one:

> A holding that such a feeble reason would justify a halting and searching would mean that all travelers on the highway would hazard such treatment, for who among them would not be guilty of crossing the center line so much as a foot from time to time. All could, therefore, be subjected to inconvenience, ignominy and embarrassment ....

*Collins v. State*, 65 So.2d 61, 63 (Fla.1953).

Like the Supreme Court of Florida, we believe that such a result would run counter to our Constitution's promise against unreasonable searches and seizures by law enforcement officials.

---

**10.** We emphasize that we do not hold that an officer *could* not consistently with the fourth amendment stop a vehicle under similar circumstances to investigate for drunk driving. *Cf. Berkermer v. McCarty*, 468 U.S. 420, 104 S.Ct. 3138, 82 L.Ed.2d 317 (1984) (*Terry*-stop for drunk driving when "weaving in and out of lane").

**11.** We note the timing of the request for the drug dog only as an element of our discussion of pretextual stops. We offer no opinion regarding the validity of such a detention and subsequent search where the initial stop is valid. *See,* footnote 1, *supra; cf. Sharpe, supra.*

## CONCLUSION

Drug trafficking is a serious menace to this nation, and law enforcement agencies should use every available means toward its eradication—provided that the methods do not offend the protections of the Constitution. Here a single six-inch deviation from a driver's course did not give reasonable grounds for a stop. Accordingly, the stop was an unreasonable seizure under the fourth amendment. The order of the district court denying the motions to suppress is REVERSED, the judgments of conviction VACATED, and the cases REMANDED to the district court for further proceedings consistent with this opinion.