DONE.

**UNITED STATES of America**

v.

**Jose A. RODRIGUEZ and Jorge F. Peguero, Defendants.**

**Crim. No. 90–13–MAC (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

May 11, 1990.

Michael T. Solis, Macon, Ga., for plaintiff.

M. Hatcher Norris, Fred Haddad, Ft. Lauderdale, Fla., for defendants.

## ORDER

OWENS, Chief Judge.

Before the court are defendant Jose R. Rodriguez's and defendant Jorge F. Peguero's motions to suppress as evidence contraband discovered as the result of a search of their vehicle by Georgia State Patrol Trooper Greg Patrick. A hearing was held on this matter on April 30, 1990. The court, having considered the evidence presented at the hearing, the briefs filed by the parties, the arguments contained therein and the relevant case law, now issues the following order.

## FACTUAL BACKGROUND

On January 30, 1990, Trooper Greg Patrick of the Georgia State Patrol noticed the vehicle operated by the defendants traveling northbound on I–75 in Peach County. Trooper Patrick testified that at the time that he noticed the defendants' vehicle it was misting and the defendants did not have their headlights on as required by O.C.G.A. § 4–8–20. Trooper Patrick turned into the median and began to pursue the defendants. The defendants were not exceeding the posted speed limit.

Trooper Patrick testified that he traveled approximately two miles before catching up to the defendants. Patrick stated that while he was following the defendants he noticed that the vehicle weaved at least three times, touching the white lines which divide the lanes. However, the defendants' vehicle never crossed into either of the other lanes. Patrick then switched from the far left northbound lane into the center lane behind the defendants' vehicle and activated the video camera in his patrol car. Trooper Patrick testified that when he activated his video camera he had made the decision to stop the defendants. A short time after activating the camera, Trooper Patrick turned on his blue lights and the defendants pulled their vehicle to the side of the road.

Trooper Patrick requested that defendant Rodriguez exit the vehicle. Defendant Rodriguez exited the vehicle and moved to the rear of his vehicle. Trooper Patrick requested Rodriguez's license and registration. Rodriguez presented his driver's license and returned to the car to get the rental agreement. Trooper Patrick asked Rodriguez where he and defendant Peguero were headed. Defendant Rodriguez told him that they were going to Atlanta to look at some trucks they were considering purchasing for their business. Rodriguez asked Trooper Patrick why he had been stopped. Trooper Patrick stated that he had stopped him for not having his headlights on and he was "bouncing around in the lane of traffic."

Trooper Patrick then told defendant Rodriguez, "I am going to write you a warning; I just want to make sure you're all right." Trooper Patrick then asked defendant Rodriguez if he was aware that the rental contract stated that the vehicle was not to be taken out of Florida. Defendant Rodriguez stated that he had informed the

rental car agency that he would be traveling outside of Florida when he rented the vehicle. Trooper Patrick next approached the defendants' vehicle from the passenger side and asked defendant Peguero where they were going. Defendant Peguero confirmed Rodriguez's statement regarding their destination and the purpose of their trip.

Trooper Patrick then returned to his patrol car and ran a license check on the vehicle. The dispatcher reported that everything was clear. Trooper Patrick then requested that the dispatcher telephone the rental car agency to make sure that the defendants were allowed to take the vehicle out of Florida. Before the dispatcher radioed back with her report, Trooper Patrick called for backup, stating that he was going to get permission to conduct a search of the defendants' vehicle. The dispatcher contacted Trooper Patrick and informed him that everything was clear with the rental car agency and that if he had no further charges against the defendants they were free to go. Trooper Patrick then issued the warning to defendant Rodriguez for weaving and returned his driver's license.

Trooper Patrick then asked defendant Rodriguez if he had any weapons or drugs in the car. Defendant Rodriguez responded that he did not. Trooper Patrick then asked if Rodriguez had any luggage in the car. Rodriguez stated that he had luggage and a cooler in the car. Trooper Patrick then asked if it would be okay if he looked in the car and Rodriguez responded that it would be okay. Trooper Patrick then asked defendant Peguero to step out of the car and conducted a pat down search of the defendants. He then began searching the vehicle and its contents. Trooper Patrick and the other two officers who had arrived as backup discovered cocaine in the bottom of the cooler under the lining.

## DISCUSSION

The defendants argue that the stop of the vehicle which they were operating was merely a pretext in order to gather evidence of criminal activity in order to conduct a search of the defendants' vehicle. The government contends that the initial stop of defendants' vehicle was justified to investigate possible traffic violations, and the subsequent detention of the car was justified in order to determine the defendants' authority to have taken the car out of the State of Florida. However, the government's position is unsupported by the evidence. The test for determining whether a stop is pretextual is whether a reasonable officer would have made the stop absent an illegitimate motive. *United States v. Smith*, 799 F.2d 704 (11th Cir. 1986). The subjective intent of the officer is immaterial. The focus is on the objective reasonableness of the officers' actions under the circumstances. *Id.* at 710. The court, having viewed the video tape of the stop of defendants' vehicle, is inclined to agree that the stop was pretextual.

Trooper Patrick testified that he stopped the defendants' vehicle because it was misting and the defendants did not have their headlights on when they entered Peach County from Houston County. However, the video tape shows clearly that defendants' automobile did have its headlights on prior to the time Trooper Patrick made the stop. The tape also shows that it was not raining at the time the stop was made. Trooper Patrick also testified that he observed the defendants' vehicle weaving within the lane of traffic after he started to follow them. Trooper Patrick stated that he saw the defendants' vehicle touch the white dividing line three times; however, the vehicle never crossed the white line. Trooper Patrick then activated his video camera. The tape shows no weaving on the part of the defendants' automobile for at least two miles prior to the stop.

The court in this case finds that a reasonable officer would not have stopped defendants' vehicle. Even if defendants did not have their headlights on at the time that they crossed from Houston into Peach County, the video tape clearly shows that they had their headlights on prior to the time the stop was made by Trooper Patrick, thus alleviating the necessity of stopping the defendants. This conclusion

is supported by Trooper Patrick when he stated that he was not concerned with the headlight violation. Trooper Patrick also stated that he stopped the defendants for weaving; however, the video tape shows that Trooper Patrick never made any inquiry into the possible cause of the alleged weaving. Moreover, the court seriously questions whether the failure to stay in a straight line within a single lane of traffic constitutes a traffic offense under Georgia law.

Furthermore, Trooper Patrick called for backup stating that he was going to get permission to search, even before he received an answer to his inquiry regarding the defendants' authority to operate the vehicle outside of Florida. Trooper Patrick's immediate step to investigate for the presence of drugs indicates the inevitable disjunction between the stop's possible justification and its actual scope. *Smith* at 711.

■ The court further finds that Trooper Patrick lacked reasonable suspicion based upon specific articulable facts which would have justified detaining defendants after the warning citation had been issued. Trooper Patrick received word from the dispatcher that all was clear with the rental car agency and that the defendants were free to go absent other charges. However, Trooper Patrick requested permission to look in defendants' vehicle even though he had no reasonable grounds to suspect that the defendants were involved in criminal activity. The government contends that the clause in the rental agreement stating that the car should not be taken out of the State of Florida and nervousness on the part of defendant Rodriguez was sufficient to constitute reasonable suspicion. However, the government ignores the fact that the rental car agency confirmed the defendants' authority to take the car out of Florida prior to Trooper Patrick's request to look into the vehicle. Additionally, the video tape shows that defendant Rodriguez was not wearing a jacket while standing outside of the vehicle. At one point Rodriguez requested Patrick's permission to return to his vehicle, indicating that he was cold. This could account for any perceived nervousness by Trooper Patrick. Thus, the government's contentions are without merit.

If viewed objectively, the stop is based upon a pretext. Were the court to rule otherwise, "with little more than an inarticulate 'hunch' of illegal activity, an officer could begin following a vehicle and then stop it for the slightest deviation from a completely steady course." *Id.* "Such a result would run counter to our Constitution's promise against unreasonable searches and seizures by law enforcement officials." *Id.* The court further finds that Trooper Patrick's detention of the defendants in the instant case was not supported by a reasonable suspicion that the defendants were engaged in criminal activity.

Consequently, defendants' motions to suppress are hereby GRANTED.

SO ORDERED.