**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Marcus Lamour HARVEY, Defendant–Appellant.**

**No. 92–2366.**

United States Court of Appeals, Sixth Circuit.

May 5, 1994.

Before: KEITH, GUY, and BATCHELDER, Circuit Judges.

**ORDER**

The court having received a petition for rehearing en banc, and the petition having been circulated not only to the original panel members but also to all other active judges of this court, and less than a majority of the judges having favored the suggestion, the petition for rehearing has been referred to the original hearing panel.

The panel has further reviewed the petition for rehearing and concludes that the issues raised in the petition were fully considered upon the original submission and decision of the case. Accordingly, the petition is denied.

KEITH, Circuit Judge, dissenting from the denial of the petition for rehearing *en banc*.

Because I firmly believe this case presents one of the rare instances where *en banc* review is proper, I dissent from the denial of the petition for rehearing.

The Fourth Amendment imposes "a standard of 'reasonableness' upon the exercise of discretion by government officials." *Delaware v. Prouse*, 440 U.S. 648, 653–54, 99 S.Ct. 1391, 1396, 59 L.Ed.2d 660 (1979). Despite the Fourth Amendment's requirements, this circuit held the correct inquiry for pretextual stops is "whether [a] particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of whether this was the only basis or merely one basis for the stop." *United States v. Ferguson*, 8 F.3d 385 (6th Cir.1993). I dissented in *Ferguson* because I believe this test waives any meaningful review of stops, and therefore, is ripe for abuse. *Harvey* exemplifies the abuse of which I warned.

By focusing on the existence of minor traffic violations and refusing to examine other improper bases for a particular stop, the court fails to honor the guarantees of the Fourth Amendment and the Equal Protection Clause. The Constitution categorically prohibits disparate treatment based on race. Under the *Ferguson* test, however, the court's failure to limit an officer's discretion to stop motorists once a traffic offense establishes probable cause negates any reasonableness inquiry and permits pretext to serve as probable cause.

In the instant case, the majority primarily focused on the existence of minor traffic violations. The Appellants drove three miles over the speed limit in a vehicle without a bumper. Once the officer established the existence of traffic violations, the majority ignored the officer's testimony that he stopped the vehicle because the occupants were African–Americans. By myopically focusing on the traffic violations, the majority failed to consider the glaring Equal Protection violation. In doing so, the majority licensed disparate treatment based on race.

In *Harvey*, I dissented from the majority opinion and urged the court to adopt an exception to the *Ferguson* test that would avoid the result reached in the instant case and would prohibit the use of pretext as probable cause. I reiterate my dissent and note that this circuit grievously erred by denying the petition for rehearing *en banc* in the instant case.

BOYCE F. MARTIN, JR., Circuit Judge, dissenting from the denial of the petition for rehearing en banc.

In moving from a reasonable and consistent approach to Fourth Amendment claims involving alleged pretext to the ad hoc standard employed by the majority in this case, this Court has charted an ill-advised and dangerous course. *Compare United States v. Pino*, 855 F.2d 357, 361 (6th Cir.1988) (adopting test used in *United States v. Smith*, 799 F.2d 704, 708 (11th Cir.1986), that traffic stop is valid if reasonable officer would have made the seizure in the absence of an illegitimate motivation) *with United States v. Ferguson*, 8 F.3d 385, 391–92 (6th Cir.1993) (en banc) (stop is valid if officer had probable cause to believe that a traffic violation had occurred or was occurring). As a result, we have once again endorsed the introduction of evidence seized pursuant to what, in my opinion, is an illegal search.

The facts of the case are summarized in the majority opinion as follows:

On May 22, 1990, on I–475 in Genesee County, Michigan, the defendant was a passenger in a 1978 Chevrolet automobile that had no front bumper or right front headlight and that was clocked by police officers exceeding the speed limit by several miles per hour. The officers stopped the vehicle for speeding and equipment violations and because, as one officer later testified at the suppression hearing, "[t]he vehicle that I observed with the defective equipment was very similar in appearance

and profile to several other vehicles that I have stopped which ultimately ended in arrests of drug traffickers." When the driver of the car was unable to produce a driver's license, he was asked to step out of the car. He admitted then that his license was suspended; he was placed under arrest for driving with a suspended license; and, while being searched incident to the arrest, he was found to have a rock of cocaine in his jacket pocket. The driver gave conflicting stories about who owned the car, but the vehicle registration that he produced showed defendant Marcus Harvey to be the owner. Neither Harvey nor the other passenger could produce a driver's license (Harvey's license had been suspended also and the other passenger had never obtained a license), or any other form of identification. Both passengers were asked to get out of the vehicle and were patted down for weapons by the officers; no weapons were found. Following the policy of their police department, the officers impounded the car because there was no licensed driver to drive it away, and conducted an inventory search of the car. Because none of the occupants had the key to the vehicle's trunk, the officers removed the back seat in order to inventory the trunk and found there a pair of men's sweat pants whose pockets contained 78 rocks of crack cocaine and six live .357 magnum revolver cartridges. Also in the trunk was a bullet-proof vest. At this point the officers pried open the trunk of the car to more carefully search it and found a .357 magnum six-shot revolver.

*United States v. Harvey,* 16 F.3d 109, 110–11 (6th Cir.1994). At trial, the officer who conducted the stop testified in the following manner:

Q: Officer Collardey, you gave the Prosecutor two reasons for your effecting a traffic stop. One was the traffic infraction, speeding and equipment violation, and then you referred to something that I hadn't heard yet today, that was, fitting the general description of some sort of a profile?

A: It did, yeah, it did fit.

Q: Was it a certain way that the damage had been on this car that made it look like it fit a profile for you?

A: No, I made that statement on the basis of my experience on that highway, and drug traffickers that I have arrested in the Flint area.

Officer Collardey continued:

Q: What else made you think this fits some sort of a profile?

A: There were three young black male occupants in an old vehicle.

Q: Three young black male occupants in a car?

A: Yes, sir.

Q: And that was the basis or part of the basis for your stopping of that car?

A: The age of the vehicle and the appearance of the occupants.

.    .    .    .    .

Q (district judge): What was it about the appearance of the occupants that got your attention?

A: It wasn't so much the appearance. **Almost every time that we have arrested drug traffickers from Detroit, they're usually young black males driving old cars.**

Q: Was that why you stopped the car, or did you stop the car for traffic violations?

A: I stopped them for traffic violations.

*Id.* at 113 (Keith, J., dissenting).

This Court's current approach to Fourth Amendment claims such as the one in this case is that:

so long as the officer has probable cause to believe that a traffic violation has occurred or was occurring, the resulting stop is not unlawful and does not violate the Fourth Amendment. We focus not on whether a reasonable officer "would" have stopped the suspect (even though he had probable cause to believe that a traffic violation had occurred), or whether any officer "could" have stopped the suspect (because a traffic violation had in fact occurred), but on whether this particular officer in fact had probable cause to believe that a traffic offense had occurred, regardless of wheth-

er this was the only basis or merely one basis for the stop.

*Ferguson,* 8 F.3d at 391 (citations omitted). Under this regrettable standard, I concede that the traffic stop here was entirely valid. It is also clear to me, however, that the asserted justifications for the stop—the missing bumper and headlight and the car's extraordinary speed of "several miles per hour" over the limit—were entirely pretextual.

As Justice Frankfurter eloquently stated years ago, most who actually raise Fourth Amendment claims are "not very nice people." *United States v. Rabinowitz,* 339 U.S. 56, 69, 70 S.Ct. 430, 436, 94 L.Ed. 653 (1950) (Frankfurter, J., dissenting), *overruled by, Chimel v. California,* 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). Cases involving unpopular defendants led this Court to a flawed legal standard. I am also confident that, as Fourth Amendment claimants are unlikely to get any nicer, the Court will, as it has done today, only continue to compound its initial misjudgment. Indeed, by adopting the position that the police may stop any automobile with a minor equipment defect, or one whose driver commits any petty traffic violation, we have effectively declared that citizens relinquish all meaningful Fourth Amendment protections simply by choosing to enter an automobile.

Armed with the comforting knowledge— available only in hindsight—that the car in this case did contain contraband, the Court has validated a police officer's mere hunch as the basis for a legitimate traffic stop. In doing so, we appear to have abandoned the Fourth Amendment solely to expediency. Given the fear engendered by the rising tide of drug-related crime, some may support this approach. I, for one, however, must dissent from the adoption of a standard evidencing such reckless disregard for the protection that the Fourth Amendment grants to the citizens of this country.

NATHANIEL R. JONES, dissenting.

I wish to join the excellent dissents of my colleagues, Judge Keith and Judge Martin. Moreover, I write separately because of the ominousness with which I view the majority opinion. Today the majority votes against rehearing *en banc,* allowing the decision in *United States v. Harvey,* 16 F.3d 109 (6th Cir.1994), to stand as the law of the circuit. Because I continue to believe that the principle espoused in *Harvey* threatens to decimate the constitutional rights of a significant portion of our population, I dissent.

In *Harvey,* police officers pulled over a car in which the defendant, Marcus Harvey, and two other young Black males were riding. At the time of the stop, the car was travelling three miles over the speed limit, and had a broken headlight and a missing front bumper. At most, these violations may have formed the basis for traffic violation citations. Yet, after a series of coincidental mishaps, the car was impounded, resulting in its subsequent inventory search. During this search the officers uncovered several rounds of live ammunition, a bullet proof vest, 78 rocks of crack cocaine, and a .357 magnum. At trial, Harvey sought to suppress this evidence. The trial court, however, refused to grant his motion finding that the search was legal. The evidence was admitted, and Harvey entered a conditional plea of guilty.

On appeal, a majority of the panel agreed with the decision of the district court, finding, *inter alia,* that the various traffic violations created probable cause to effect the stop. In coming to this conclusion, the majority found irrelevant the officer's comment that he had pulled the car over because the occupants were Black. However, the majority's indifference to the officer's use of race as a proxy for probable cause is deeply offensive to the constitutional guarantees of personal liberty and equality. Accordingly, I cannot voice strongly enough my opposition to today's decision to permit *Harvey* to stand.

Perhaps I am expected, as a judge, to remain totally detached from the emotions that embed themselves within the issues of race that the court confronts. Such an approach would arguably be an ideal way in which to conduct the business of decision-making. However, such an ideal is rarely— or at least not consistently—achieved by judges of any race. Moreover, the blind adherence to such an ideal unwisely ignores the undeniable history of racism in America. Contrary to the conclusion of the majority,

the officer's statement that one justification for stopping the car was the race of its occupants is exceedingly relevant. Although the *Harvey* decision and today's vote denying rehearing would seem to indicate otherwise, the simple reality is that race, too often, does matter when it comes to the enforcement of the laws. A perusal of American history and constitutional jurisprudence bears this fact out.

In concluding that the traffic violations (citation offenses) constituted probable cause to justify the stop of Harvey's vehicle, the *Harvey* majority relied upon this circuit's decision in *United States v. Ferguson*, 8 F.3d 385 (6th Cir.1993). However, as the decision in *Harvey* so disturbingly illustrates, the *Ferguson* opinion legitimizes the use of race in a way that my reading of the Fourteenth Amendment holds is impermissible. Presumably, the rationalization for the *Ferguson* decision was an impassioned desire to be "tough on crime." However, though I, too, share concerns over the rampant crime that seems to have consumed our streets, I have profound reservations over the use of the war on drugs as a justification for the abridgement of individual rights. Similar rationalizations have been used by other courts, in other crises, only to be later regretted. *See Korematsu v. United States*, 323 U.S. 214, 65 S.Ct. 193, 89 L.Ed. 194 (1944). Notwithstanding the pressing urgency of national security or the war on drugs, the Constitution must stand as a bulwark against incursions on civil liberties. Yet, ironically, today's decision has afforded those that perpetrate such incursions refuge in the federal courts. The Sixth Circuit must at some point come to realize that the Constitution does not abide police officers basing their law enforcement decisions on the color of a person's skin. No matter how we may excuse it, that is what occurred here.

Once again, I remind the majority of Lord Atkin's profound words in *Liversidge v. Anderson*, a case that construed emergency defense legislation in Great Britain during World War II. He wrote:

In England, amidst the clash of arms the laws are not silent. They may be changed, but they speak the same language in war as in peace. It has always been one of the pillars of freedom, one of the principles of liberty for which, on recent authority, we are now fighting, that the judges are not respecters of persons, and stand between the subject and any attempted encroachments of his liberty by the executive, alert to see that any coercive action is justified in law.

I protest, even if I do it alone, against a strained construction put upon words, with the effect of giving uncontrolled power of imprisonment to the Minister.

3 All E.R. 338, 361 (1941).

Judge Keith's eloquent dissent in *Harvey* warned that this court was once again placing in the hands of police officers the power to stop, arrest, jail and harass persons based solely upon their race. I stand with him in urging the hazard of this position, for no matter the exigency presented by the war on drugs, the Constitution is not silent. Its command is the same during crises as it is in periods of tranquility. Regrettably, today's denial of rehearing allows a decision, which overrides the constitutional rights of many American citizens (by condoning the use of race as a proxy for reasonable suspicion of criminal activity) to stand as the law of this circuit. Because I cannot agree, I dissent.