## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
### DIVISION OF ST. THOMAS AND ST. JOHN
*******

| | |
|---|---|
| PEOPLE OF THE VIRGIN ISLANDS, ) | |
| ) | |
| Plaintiff, ) | CASE NO. ST-19-CR-210 |
| ) | |
| v. ) | |
| ) | |
| KEELAN J. GERALD, ) | |
| ) | |
| Defendant. ) | Cite as 2020 V.I. Super 77U |
| _____ ) | |

**ALEXANDRA C. BYNUM, ESQ.**
Assistant Attorney General
Virgin Islands Department of Justice
34-38 Kronprindsens Gade
St. Thomas, U.S. Virgin Islands 00802
*Attorney for the People of the Virgin Islands*

**JULIE SMITH TODMAN, ESQ.**
Territorial Public Defender
P.O. Box 6040
St. Thomas, U.S. Virgin Islands 00804
*Attorney for the Defendant*

**CARTY, RENÉE GUMBS,** Judge

## MEMORANDUM OPINION

¶ 1.    **BEFORE THE COURT** is the "Defendant's Motion to Suppress" filed by Defendant Keelan Gerald ("Gerald" or "Defendant") on December 30, 2019. In his motion, Gerald requests suppression of all evidence seized because of an illegal seizure and search of his person, his backpack, and lunch kit. The People based the search and seizure of Gerald on the suspicion that he was placing a leaf-like green substance, which appeared to be marijuana, into zip lock bags. The People filed a response to Defendant's motion on January 9, 2020, and the matter came on for a hearing on January 14, 2020.

¶ 2.    Based on the moving papers and the testimony adduced at the suppression hearing, this Court finds the initial seizure was lawful and that the People's search of the Defendant was not a violation of Defendant's Fourth Amendment Rights. Therefore, this Court will deny Defendant's motion to suppress the evidence.

## I.  FACTUAL BACKGROUND

¶3.     On September 5, 2019, at approximately 5:00 pm, Officer Aliek Wescott, along with Officer Shakim Mike, Officer Kyle Gabriel, Officer Teshaun Adams, and Detective Ivan Christopher, all of whom were assigned to the Special Operations Bureau (SOB) of the Virgin Islands Police Department, were conducting a routine community oriented policing operation, known as a "walk-and-talk," of Oswald Harris Court housing community. (Mot.Hr'g Tr.10). Oswald Harris Court is known to be a high crime area where there are many instances of drug trafficking as well as discharging of firearms. (Mot.Hr'g Tr.9).  Officer Wescott testified that he saw a male wearing a blue shirt and a black hat, sitting on a bench located between Oswald Harris Court Building #1 and Building #2. (Mot.Hr'g Tr.11). Police later identified this male as Keelan Gerald.

¶4.     Officer Wescott testified that from approximately 10 to 15 feet away, he observed Gerald putting what appeared to be a green leaf-like substance into a zip lock bag in plain view. (Mot.Hr'g Tr.19). In order to ensure the safety of himself and the other officers, Officer Wescott approached Gerald and directed him to put his hands on his head. (Mot.Hr'g Tr.20). Officer Wescott testified that once he approached, he observed that Gerald had what appeared to be one large zip lock bag of marijuana in his hand and multiple empty smaller (dime-sized) zip lock bags on his lap, and appeared to be putting the green leaf-like substance into the smaller bags from the larger one. (Mot.Hr'g Tr.12).  Gerald later testified that he had one large zip lock bag of marijuana in his hand and two empty smaller (dime-sized) zip lock bags on his lap. (Mot.Hr'g Tr.35). Officer Wescott further stated that he asked the Defendant if he had any other narcotics on his person. The Defendant replied, "No, I just came here to smoke a joint." (Mot.Hr'g Tr.14).

¶ 5.    At that point, Officer Wescott patted down the Defendant and recovered some money from Defendant's left pants pocket as well as a clear latex glove from his rear left pants pocket. (Mot.Hr'g Tr.25). Officer Wescott then searched the latex glove and found a clear plastic bag of crack cocaine inside the glove. *Id.* Officer Wescott then searched Defendant's backpack and lunch kit. He recovered one clear plastic bag containing multiple zip lock bags of crushed tobacco, a black scale, glass jars, and one pack of Apple brand zip lock bags. The lunch kit contained small empty zip lock bags, a thermos with more small empty zip lock bags inside of it, and three more small empty zip lock bags which were filled with the green leafy substance. (Mot.Hr'g Tr.17).

¶ 6.    The green leaf-like substance tested positive for marijuana and weighed approximately 13.1 grams. The white rock-like substance tested positive for crack cocaine and weighed approximately 3.4 grams. Gerald was advised of his Constitutional rights and arrested for possession of a controlled substance with intent to distribute.

## II.    LEGAL DISCUSSION

### A. Standard for Analyzing a Motion to Suppress.

¶ 7.    "The proponent of a motion to suppress has the burden of establishing that his own Fourth Amendment rights were violated by the challenged search or seizure." *United States v. Murray*, 2010 WL 3069485 at *3 (D.V.I. 2010) (quoting *Rakas v. Illinois*, 439 U.S. 128, 132 (1978). If the search or seizure is warrantless, the burden shifts to the People to demonstrate that the search or seizure was permissible under an exception to the Fourth Amendment's warrant requirement. Under the Fourth Amendment, people have the right "to be secure in their persons, houses...against unreasonable searches and seizures." U.S. Const. amend. IV; *Terry v. Ohio*, 392 U.S. 1, 9 (1968) (adding that this "right of personal security belongs as much to the citizen on the streets" as to a citizen in her home). In *Thomas v. The People of the Virgin Islands*, quoting the U.S. Supreme

Court, the Virgin Islands Supreme Court noted that searches conducted without a warrant are "per se unreasonable under the Fourth Amendment – subject only to a few specifically established and well-delineated exceptions." *See Thomas v. People of the Virgin Islands*, 63 V.I. 595, 605 (V.I. 2015) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967).[1]

¶ 8.      The Fourth Amendment analysis typically proceeds in three stages. First, the Court asks whether a Fourth Amendment event, such as a search or a seizure, has occurred. Next, the Court considers whether that search or seizure was reasonable. If the search or seizure was unreasonable, the Court must then determine whether the circumstances warrant suppression of the evidence. *People of the V.I. v. Graham*, No. SX-18-CR-130, 2020 V.I. LEXIS 12 (Super. Ct. Feb. 11, 2020) (quoting *United States v. Smith*, 575 F.3d 308, 312-13 (3d Cir. 2009)). In order to pass constitutional muster, a warrantless search must be shown to fall within one of the few narrowly defined exceptions to the warrant requirement. *Government v. Fabiani-Ogno*, 20 V.I. 404 (Terr. Ct. 1984). However, while the Fourth Amendment ensures an individual's rights to be secure unreasonable search and seizures, it does not require a police officer to ignore a possible crime. *People of the V.I. v. Archibald*, 50 V.I. 74,84 (Super. Ct. 2008) (quoting *United States v. Chabot*, 531 F. Supp. 1063 (D.V.I. 1982)).

## B. Decriminalization of Marijuana Does Not Affect Analysis on the Reasonableness of the Seizure

¶ 9.      The issue here is whether the decriminalization of marijuana has an effect on this seizure. Two years ago, the Virgin Islands Supreme Court addressed this exact question in *People v. Looby*, 2018 WL 3005933 *5 (2018), when they searched through the legislative history and text of Act No. 7700. In rationalizing the decriminalization of marijuana, the Legislature reasoned that it would

---

[1] Courts hold this protection in no higher regard, than when the search in question is executed at the home of the defendant, noting "the physical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed." *United States v. Mallory*, 765 F.3d 373, 382 (3d Cir. 2014) (quoting *Payton v. New York*, 445 U.S. 573, 590 (1980).

free up criminal justice resources to deal with more serious crimes, reduce court costs in prosecuting marijuana possession, and considered the potential health benefits of marijuana. 2014 V.I. Sess. Laws 191, § 2(a). However, the legislature concluded, as other states have concluded, that while the possession of marijuana of one ounce or less no longer gives the officers the power to arrest, it still remains unlawful. *People v. Ramos*, 122 A.D. 3d 462, 465 (N.Y. App. 1st Dep't 2014) (noting that an officer's suspicion that a driver is smoking marijuana "can justify a traffic stop).[2] Furthermore, marijuana remains a Schedule I controlled substance under Title 19, §595 of the Virgin Islands Code. *Looby*, 2018 WL 3005933 at *5. Section 607a(b)(2) allows for the police to confiscate the marijuana when it proscribed "any person who possesses one ounce or less of marijuana...is subject to forfeiture of the contraband. *Id.* Further, §607(a)(b)(3) provides that "any person under the age of eighteen at the time of the offense, who possesses one ounce or less of marijuana...is subject to forfeiture of the contraband. *Id.* To hold otherwise would undermine the intent of the legislators in providing a mechanism for the officers to "ticket offenders and seize contraband as evidence they suspect of violating 19 V.I.C. §607(a) or 20 V.I.C. §493."[3] *People v. Cannergeiter*, 65 V.I. 114, 134 (Super. Ct. 2016).

### C. Officers' Interaction with Defendant Amounts to a Seizure Based on Articulable Facts That Criminal Activity was Afoot

¶ 10.   Courts determine whether a seizure took place based on an exertion of the police use of physical force or submission to a show of authority. *Brendlin v. Cal*, 551 U.S. 249, 250 (2007); The question in every case, based from the Defendant's perspective, is whether a reasonable person would feel free to leave or decline the officers' request or otherwise terminate the encounter given

---

[3] *See also State v. Randy J.*, 150 N.M 683, 693 (N.M Ct. App. 2011) (holding that the odor of marijuana emanating from the vehicle combined with the odor of marijuana would lead a reasonable officer to believe he was driving under the influence); *Jenkins v. State*, 970 A.2d 154, 158-159 (Del. 2009) (Holding that Jenkins' behavior and the strong marijuana odor were sufficient to establish probable cause to arrest Jenkins for Driving Under the Influence).

the circumstances. *United States v. Drayton*, 536 U.S. 194, 202 (2002); *Florida v. Bostick*, 501 U.S. 429, 436 (1991) (Holding that the police's conduct controls whether a reasonable person on a bus would feel free to leave); *People v. Prentice*, 64 V.I. 79, 88 (Super. Ct. 2016).

¶ 11. In the present case, the Defendant was clearly seized. Officer Wescott and his fellow officers approached Gerald, ordered Gerald to put his hands on the top of his head. Gerald immediately complied and was then searched. If a reasonable person in the Defendant's position would not feel that they were free to leave at their will, we conclude that the SOB officers' interaction with the Defendant amounts to a seizure.

### D. Officer Wescott had Requisite Reasonable Suspicion to Search and Seize Defendant's Person.

¶ 12. The Defense argues that officers lacked requisite reasonable suspicion to conduct a search under *Terry v. Ohio*, 392 U.S. 1 (1968). The Fourth Amendment protects people, not places, and wherever an individual may harbor a reasonable "expectation of privacy," he is entitled to be free from unreasonable governmental intrusion. *Terry v. Ohio*, 392 U.S. 1, 9 (1968). Accordingly, the Fourth Amendment protects a person's expectations of privacy that society has recognized as reasonable. *Simmonds v. Virgin Islands*, 53 V.I. 549, 574 (V.I. 2010) (Swan, J. dissenting). Defendant was sitting in an open area on a public bench. He was putting marijuana into zip lock bags in plain view. It was 5:00 pm, a time where it is not unreasonable to expect others to come home from their jobs and pass by the bench, especially since it is between two apartment buildings. Since a reasonable person would not expect privacy in such an area, the Defendant did not harbor a reasonable expectation of privacy on the bench at Oswald Harris Court.

¶ 13. Under *Terry v. Ohio*, 392 U.S. 1, 9 (1968), an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. In determining whether the officer acted reasonably in such

6

circumstances, due weight must be given, not to his inchoate and unparticularized suspicion or "hunch," but to the specific reasonable inferences which he is entitled to draw from the facts in light of his experience. *Id.* at 27. The Defense argues that Officer Wescott had no basis for reasonable suspicion to search the Defendant. The Defense proposes that the officer "provided no facts to support removing items from Mr. Gerald's person" and that since Officer Wescott did not test the marijuana, and only observed a green leaf-like substance from approximately ten to fifteen feet away, he had no basis to search Defendant. The Defense argues that there was no field test of the substance and therefore there is no reasonable suspicion to believe that the substance was marijuana. To support his argument, the Defense states that "if the officer's suspicion is without factual foundation and articulable facts, then reasonable suspicion is lacking; and no degree of good faith, hunch, or intuition can substitute for it." *United States v. Smith*, 799 F.2d 704 (11th Cir. 1986).

¶ 14. This Court disagrees with the Defense's argument. In order to satisfy the standard of reasonable suspicion, it is not necessary that the suspect actually has done or is doing anything illegal; reasonable suspicion may be "based on acts capable of innocent explanation. *People of the V.I. v. Thomas*, 2014 V.I. LEXIS 28 (Super.Ct.2014) (quoting *United States v. Whitfield*, 634 F.3d 741, 744 (3d Cir. 2010) (citing *United States v. Valentine*, 232 F.3d 350, 356 (3d Cir.2000)). Officer Wescott stated that he had training in the recognition of marijuana and also the packaging used for the distribution of marijuana. (Mot.Hr'g Tr.6). The area that Defendant was sitting is a high crime area. The Defendant's gestures appeared to be the actions of someone who was preparing marijuana for distribution and sale. Taking an objective look at the totality of circumstances supports a finding of reasonable suspicion, hence the Court concludes that Officer Wescott had the requisite reasonable suspicion and probable cause to search and seize Defendant's person.

¶ 15.    Officer Wescott testified that he initially observed the Defendant from a ten-fifteen feet distance. (Mot.Hr'g Tr.19). Officer Wescott further testified that it was from that distance that he was able to see the Defendant sitting on a bench and putting a green leafy substance into a zip lock bag. *Id.* This observation constitutes reasonable suspicion that criminal activity is afoot. Officer Wescott further testified that once he saw the green leafy substance, he went to engage. *Id.* Officer Wescott testified that once he was close to the Defendant, he was able to see that Gerald had one large zip lock bag of marijuana in his hand and what appeared to be several small baggies on his lap. (Mot.Hr'g Tr.12). It is at this time that Officer Wescott's reasonable suspicion ripened into the requisite probable cause.

### E. Officer Wescott did not Violate Defendant's Fourth Amendment Rights by Removing Glove with Crack-Cocaine from Defendant's Pocket

¶16.    The Defense argues that because nothing in the Defendant's pockets felt like a weapon, Officer Wescott violated Defendant's Fourth Amendment Rights by removing the items from his pockets. If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that adhere in the plain-view context. *Minnesota v. Dickerson*, 508 U.S. 366, 375 (1993). In *Dickerson*, the Supreme Court held that officers violated Defendant's Fourth Amendment Rights when they retrieved a lump of cocaine from respondent's pocket. The Court reasoned that if police are lawfully in a position from which they view an object, if its incriminating character is immediately apparent, and if the officers have a lawful right of access to the object, they may seize it without a warrant. *Id.* The Court further stated that regardless of whether the officer detects the contraband by sight or by touch, however, the Fourth Amendment's requirement that the officer have probable cause to

believe that the item is contraband before seizing it ensures against excessively speculative seizures The *Dickerson* Court concluded that because the incriminating character of the contraband was not immediately apparent to the officer, and he was only able to determine that the item was contraband after manipulating it, the search was invalid.

¶17.    Unlike *Dickerson*, where there was no probable cause to search Defendant, Officer Wescott testified that he had already seen three zip lock bags and marijuana on the Defendant's lap. Officer Wescott also testified that he was trained in the Police Academy to recognize and identify different drugs, as well as paraphernalia associated with drug trafficking. (Mot.Hr'g Tr.6). Officer Wescott further testified that he was trained to recognize marijuana, both in its earth and unearthed form. (Mot.Hr'g Tr.7). It was only after observing the three zip lock bags and the marijuana that Officer Wescott searched Gerald's person. (Mot.Hr'g Tr.13). By the time the search of Gerald's person took place, it was apparent that a crime had been committed. Officer Wescott had probable cause to search the Defendant's pockets, thus Officer Wescott did not violate Defendant's Fourth Amendment Rights by removing the glove with crack-cocaine from Defendant's pocket.

### F.  Officer Wescott did not Violate Defendant's Fourth Amendment Rights by searching Defendant's Backpack and Lunch Kit.

¶18.    Under *Terry v. Ohio*, 392 U.S. 1,9 (1968), an officer may, consistent with the Fourth Amendment, conduct a brief investigatory stop when the officer has a reasonable, articulable suspicion that criminal activity is afoot. Officer Wescott searched Gerald's backpack once he had already recovered the marijuana and the cocaine as well as the drug paraphernalia. He therefore had probable cause to believe that there was contraband in the backpack and in the lunch kit. Officer Wescott had probable cause to believe that there was contraband in the backpack and in the lunch

kit, therefore the search of Defendant's backpack and lunch kit did not violate the Defendant's Fourth Amendment Rights.

## III. CONCLUSION

¶ 19.    Based on the foregoing reasons, this Court is satisfied that the People have met their burden in demonstrating that the search of the Defendant and his backpack were reasonable. Since the People believed that the Defendant was engaging in illegal activity and because the Defendant was partaking of this activity in a public place and had no reasonable expectation of privacy, the search of the Defendant was not unconstitutional. Furthermore, because the People had probable cause to believe that Defendant's backpack contained contraband, the search of the backpack was not a violation of the Defendant's Fourth Amendment rights.

Accordingly, the Court will **deny** the Defendant's motion to suppress the evidence seized. An Order accompanying this Memorandum Opinion follows.

Dated: August /9 , 2020

Renée Gumbs Carty
Judge of the Superior Court
of the Virgin Islands

**ATTEST:**
Tamara Charles
Clerk of the Court

By: _____
for Lori Boynes-Tyson
Court Clerk Supervisor  8/20 2020

CERTIFIED A TRUE COPY
Date: 8/30/2020

Clerk of the Court
By _____
Court Clerk

# IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. THOMAS AND ST. JOHN

PEOPLE OF THE VIRGIN ISLANDS,           )
                                        )
        Plaintiff,    )     CASE NO. ST-19-CR-210
                                        )
    v.                            )
                                        )
KEELAN J. GERALD,                       )
                                        )
        Defendant.    )     Cite as 2020 V.I. Super 77U
                                        )

## ORDER

**AND NOW,** for the reasons stated in the accompanying Memorandum Opinion, it is hereby

**ORDERED** that Defendant's motion to suppress is **DENIED**; and it is further

**ORDERED** that copies of this Order shall be distributed to Assistant Attorney General Alexandra C. Bynum, Esquire and Julie Smith Todman, Esquire.

Dated: August 19, 2020

ATTEST:
Tamara Charles
Clerk of the Court

By: _____
for Lori Boynes-Tyson
Chief Deputy Clerk 8/20/2020

**Renée Gumbs Carty**
Judge of the Superior Court
of the Virgin Islands

CERTIFIED A TRUE COPY
Date: _____
Clerk of the Court
By _____
Court Clerk