OPINION
Defendant-appellant Buster Lamont Johnson appeals the January 6, 1999 Judgment Entry of the Muskingum County Court of Common Pleas, which memorialized a jury verdict of guilty and sentenced appellant accordingly. Plaintiff-appellee is the State of Ohio.
 STATEMENT OF THE CASE AND FACTS
On February 4, 1998, the Muskingum County Grand Jury indicted appellant with one count of attempted murder in violation of R.C.2923.02 and one count of having weapons under a disability in violation of R.C. 2923.13(B). The indictment also contained a firearm specification in violation of R.C. 2941.149, and a repeat violent offender specification in violation of R.C. 2941.145. At his February 11, 1998 arraignment, appellant plead not guilty to each charge. This matter arises out of a shooting on January 30, 1999, at Nell's Bar. Larry Lewis, a patron of the bar, was watching a game of pool when a man wearing a dark toboggan hat and a black and white windbreaker pulled out a gun. Mr. Lewis testified he heard a loud shot, like a gunshot. When he looked around, he saw appellant pointing a gun at him. Mr. Lewis tried to duck under the table as appellant commenced shooting. Mr. Lewis was shot four times. At trial, Mr. Lewis opined appellant shot him because of a dispute between Mr. Lewis and appellant's cousin, Bernard Johnson. Apparently, two weeks before the shooting, Mr. Lewis and Mr. Johnson were involved in a fistfight. After the shooting, the majority of the bar's patrons ran for the nearest exit. Chantay Lynn Dobbins, was standing by the pool table at the time of the shooting. Ms. Dobbins knew the victim but she did not know the shooter. She testified the shooter was wearing a black toboggan hat with a Nike swoosh on it, a coat and jeans. Ms. Dobbins said she saw the man walk in the front door, walk over to the victim, pull out a gun and shoot him. T. at 174. After the shooting, Ms. Dobbins started for the backdoor. As she was going out, a person "tapped me on my back and said, `Move. Move. I've got to go.'" Ms. Dobbins let the person pass, and realized it was the shooter. He left the building and ran over the hill behind the bar. When Ms. Dobbins was trying to get out the back door, she ran into her cousin, Norma Murphy, who was trying to get into the bar. At the time of the shooting, Ms. Murphy was standing just outside the back door of Nell's Bar arguing with her boyfriend, Michael Hayes. Ms. Murphy knew both appellant and the victim. When appellant ran out of the bar, Ms. Murphy asked him what was happening. He responded "I don't know, man, I'm leaving. I'm taking off. Somebody's in there shooting. Man, they're in there shooting," and then, "I'm out of here." T. at p. 155. Appellant then ran away from the bar. Ms. Murphy testified her cousin, Chantay Dobbins, came out the back door right after appellant. Ms. Dobbins was nervous and pointed at appellant saying, "Norma, I don't know who it was, but that guy right there just shot Mookie." T. at 155. Ms. Murphy stated she did not know exactly what appellant was wearing but she did remember jeans, a jacket and a toboggan hat. Ms. Murphy did not see anyone else come out the back door. Peeress Jones was also in Nell's bar on the night of the shooting. Mr. Jones knew both the victim and appellant. Shortly after the incident, Mr. Jones told police he saw appellant shoot the victim. However, at trial, Mr. Jones had no independent recollection of the shooting. He testified he was unable to remember the shooter's face although he thought the shooter was wearing dark clothes and a dark toboggan hat. Mr. Jones admitted he was frightened to testify because he had heard rumors anyone testifying against appellant during the trial would be shot. T. at 121. Mona Lisa Reese also witnessed the shooting. Ms. Reese testified she knew both appellant and the victim. On the night of the incident, Ms. Reese saw appellant enter the bar, pull out a gun and shoot the victim. T. at 53-54. Ms. Reese also noted appellant was wearing a black and white jacket and black hat at the time of the shooting. Kim Pullie, also present at the time of the shooting, was an ex-girlfriend of appellant's cousin, Bernard Johnson. Ms. Pullie testified on the night of the shooting she saw both Bernard and appellant at Nell's Bar, but it was Bernard who wore the black toboggan hat. Ms. Pullie further testified Bernard had a gun, but appellant did not. T. at 197. At trial, Ms. Pullie also testified about the incident between Bernard Johnson and the victim approximately two weeks before the shooting. Ms. Pullie testified the victim and a couple of his friends followed Bernard Johnson into the restroom and "jumped him." When the Zanesville Police Department arrived to investigate, officers determined appellant was a suspect in the shooting. Because appellant was on parole, the police contacted appellant's parole officer, James Patrick Haas. After conducting an investigation, Mr. Haas determined there was reasonable cause to issue a verbal order to arrest appellant based on "assumed" parole violations. After the incident at the bar, appellant paged Donna Rupe and asked for a ride. Donna and her friend, Holly Colborn, met appellant at Baker's Motel and agreed to drive appellant to his cousin's house. However, before they reached their destination, the Zanesville Police Department pulled the car over and arrested appellant. Patrolman John F. McElhaney of the Zanesville Police Department acted as backup and conduct a pat down search of appellant. As a result of that search, Officer McElhaney uncovered a one-way bus ticket to Alabama, scheduled to depart at 11:00 p.m. that night. At trial, Ms. Colborn testified she gave appellant the bus ticket found in the search. Earlier that day, Ms. Colborn stole the ticket from a drug dealer and subsequently asked appellant to cash it in at the bus station for her. Because the ticket had a man's name on it, she thought a man would have better luck cashing the ticket in. On April 7, 1998, appellant filed a Motion to Suppress the bus ticket. In a July 16, 1998 Decision and Judgment Entry, the trial court denied appellant's motion to suppress and the matter was set for trial. Although the trial court commenced a jury trial on July 28, 1998, it ended in a mistrial. A second trial commenced on October 20, 1998. At the close of the State's case, appellant moved for an acquittal pursuant to Crim.R. 29. The trial court overruled the motion. On October 21, 1998, the jury found appellant guilty of one count of attempted murder with a gun specification and one count of having a weapon while under a disability. The trial court ordered a presentence investigation and scheduled a sentencing hearing for December 21, 1998. A hearing on the repeat violent offender specification was set for December 7, 1998. On December 17, 1998, the trial court filed its Findings of Fact and Conclusions of Law and adjudicated appellant a repeat violent offender under R.C. 2929.01(EE), and according to the indicted specification in R.C. 2941.149. On January 6, 1999, the trial court sentenced appellant to ten years in prison for the attempted murder conviction; three years in prison as a mandatory and consecutive term for the gun specification; five years in prison for the having weapons under a disability conviction; and ten years in prison for the repeat violent offender specification. The trial court ordered each of the sentences be served consecutively. It is from that judgment entry appellant prosecutes this appeal assigning as error:
 I. APPELLANT'S CONVICTION FOR HAVING WEAPONS UNDER DISABILITY VIOLATED HIS RIGHT TO DUE PROCESS OF LAW UNDER THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO.
 II. APPELLANT'S RIGHT TO DUE PROCESS OF LAW UNDER THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO WAS VIOLATED BY THE TRIAL COURT'S FINDING THAT APPELLANT WAS A REPEAT VIOLENT OFFENDER.
 III. APPELLANT WAS DENIED THE RIGHT TO EFFECTIVE ASSISTANCE OF COUNSEL UNDER THE CONSTITUTIONS OF THE UNTIED [SIC] STATES AND THE STATE OF OHIO.
 IV. APPELLANT'S RIGHT TO BE FREE FROM UNREASONABLE SEARCHES AND SEIZURES UNDER THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF OHIO WAS VIOLATED.
 I
In his first assignment of error, appellant maintains his conviction for having weapons under a disability violated his right to due process of law under the United States Constitution and the Ohio State Constitution. We disagree. Essentially, appellant asserts the evidence was insufficient to sustain a conviction. In State v. Jenks (1981), 61 Ohio St.3d 259, the Ohio Supreme Court set forth the standard of review when a claim of insufficiency of the evidence is made. The Ohio Supreme Court held: An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
Jenks, supra, at paragraph two of the syllabus. On review for manifest weight, a reviewing court is to examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses and determine "whether in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the judgment must be reversed. The discretionary power to grant a new hearing should be exercised only in the exceptional case in which the evidence weighs heavily against the judgment. State v. Thompkins (1997), 78 Ohio St.3d 380, 387 citing State v. Martin (1983), 20 Ohio App.3d 172, 175. Because the trier of fact is in a better position to observe the witnesses' demeanor and weigh their credibility, the weight of the evidence and the credibility of the witnesses are primarily for the trier of fact. State v. DeHass (1967), 10 Ohio St.2d 230, syllabus 1. R.C.2923.13 provides in pertinent part:
 HAVING WEAPONS WHILE UNDER DISABILITY
(A) Unless relieved from disability as provided in section 2923.14
of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if any of the following apply:
* * *
(2) The person * * * has been convicted of any felony offense of violence * * *
* * *
(B) No person who has been convicted of a felony of the first or second degree shall violate division (A) of this section within five years of the date of the person's release from imprisonment or from post-release control that is imposed for the commission of a felony of the first or second degree.
Appellant attacks the State's evidence on three fronts. First, appellant argues the State failed to prove appellant had previously been convicted of an "offense of violence." Next, appellant maintains the State failed to prove appellant was ever incarcerated and if so, when appellant was released. Finally, appellant maintains the trial court's instructions to the jury were incomplete as given, and therefore incorrect. We disagree with each of appellant's contentions. The sentencing entry for the 1992 felonious assault conviction was admitted into evidence. It stated in pertinent part: [T]he Defendant * * *asked leave of Court to withdraw his former plea of not guilty and enter a plea of guilty * * *
* * *
IT IS THEREFORE, CONSIDERED, ORDERED AND ADJUDGED by the Court that the Defendant, BUSTER L. JOHNSON, be confined in the Ohio Department of Corrections, to be delivered to the Orient Correctional Institution, for an indeterminate sentence of a minimum of three (3) years up to a maximum of fifteen (15) yeas. * * *
 June 16, 1992 Sentencing Entry.
With regard to appellant's first contention, we find felonious assault is an "offense of violence" contemplated by R.C. 2923.13. The trial court was entitled to make this determination as a matter of law. In closing argument, appellant's trial counsel argued: He had reason to be out of here (Nell's Place). He's on parole. He shouldn't have been in [the] bar in the first place, and he didn't want to incur the wrath of the parole officer, Mr. Haas, who testified here.
T. at 411-412. In other words, appellant's counsel conceded appellant was on post release control at the time of the incident. We note appellant does not contest this assertion on appeal, only that the state failed to produce sufficient evidence. Even if appellant's counsel had not conceded appellant was on parole at the time of the offense, we find the jury could infer appellant was incarcerated for at least three years and that appellant was on post release control at the time of the incident. The judgment entry specified appellant was sentenced on June 15, 1992, to an indeterminate sentence of three to fifteen years. It was therefore, reasonable for the jury to conclude appellant had served time in prison for the offense at least until June 15, 1995. Taking this fact with the testimony of a parole officer, we find a jury could reasonably conclude appellant was subject to post release control at the time of the incident or the offense was committed within five years of the date of his release. Finally, we find appellant's contention the jury instructions confused sections (A) and (B) of R.C. 2923.13, supra, and in the end, failed to instruct the jury on either section, is unpersuasive. Appellant maintains he was charged with a violation of R.C. 2923.13(B) which would require the state to prove he violated R.C. 2923.13(A) within five years of the date of his release from prison or from post-release control from a sentence on a first or second degree felony. R.C. 2923.13(A) requires proof appellant was convicted of a "felony offense of violence," but the jury was never so instructed. Because there were no objections to the jury instructions, we review this portion of appellant's first assignment of error under the plain error standard. Crim.R. 52(B) provides: (B) Plain Error. Plain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court.
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226. In instructing the jury, the trial court stated: In the second count of the ind
 STATE OF OHIO VS. BUSTER LAMONT JOHNSON PART II
Notice of plain error under this rule is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice. See: State v. Long53 Ohio St.2d 91; State v. Cooperrider (1983), 4 Ohio St.3d 226. In instructing the jury, the trial court stated: In the second count of the indictment the defendant is charged with having a weapon while under disability. Before you can find the defendant guilty, you must find beyond a reasonable doubt that on or about the 31st day of January, 1998, and in Muskingum County, Ohio, the defendant knowingly had, carried or used a firearm, to-wit, a small caliber handgun, and the defendant had previously been convicted of an aggravated felony of the second degree, to-wit, felonious assault.
T. at 127-428.
While we agree the trial court failed to instruct the jury on the "offense of violence," we see no error affecting a substantial right or creating a manifest injustice. As noted, supra, we find felonious assault to be an "offense of violence" as a matter of law for purposes of R.C. 2923.13. Appellant's first assignment of error is overruled.
 II
In his second assignment of error, appellant argues his rights to due process under the United States Constitution and the Ohio State Constitution were violated when the trial court found appellant was a repeat violent offender. We review the assignment under the same sufficiency of the evidence standard noted in our discussion of assignment of error I, supra. R.C. 2929.01 defines a repeat violent offender as: (EE) "Repeat violent offender" means a person about whom both the following apply:
(1) The person has been convicted of or has pleaded guilty to, and is being sentenced for committing, for complicity in committing, or for an attempt to commit, * * * a felony of he second degree that involved an attempt to cause serious physical harm to a person or that resulted in serious physical harm to a person.
(2) Either of the following applies:
(a) The person previously was convicted of or pleaded guilty to, and served a prison term for, any of the following:
(i) * * * a felony of the first or second degree that resulted in * * * physical harm to a person, or complicity in or an attempt to commit any of those offenses;
* * *
At the repeat violent offender hearing, the State presented the testimony of Todd Bickle. Mr. Bickle identified a certified copy of a sentencing entry from State v. Buster Johnson, case number 92-53, which demonstrated appellant had been sentenced on a conviction for felonious assault, a felony of the second degree, on June 16, 1992. The State also presented the testimony of Bob Stephenson, Sheriff of Muskingum County. Sherif Stephenson was the detective assigned to appellant's 1992 case. Sheriff Stephenson explained that previous case also involved a shooting. At that time, appellant and appellant's brother each fired at the victim, however, the victim was only hit once. Appellant pled guilty to felonious assault but the evidence never conclusively established which gun caused the victim's injury. Sheriff Stephenson testified the victim did identify appellant as the person who shot him. Appellant contends because there was no evidence from the first felonious assault appellant actually fired the shot that caused injury, appellant cannot qualify as a repeat violent offender. We disagree. In order to find appellant was a repeat violent offender, the state had to prove: 1) appellant was convicted of and sentenced for committing a felony of the second degree, which involved an attempt to cause serious physical harm to a person (the shooting of Larry Lewis), and 2) appellant previously pled guilty to, and served a prison term for a felony of the first or second degree which resulted in physical harm to a person or complicity in or an attempt to commit any of those offenses. Appellant was convicted of and facing sentence for the attempted murder of Larry Lewis, a felony of the first degree. At the repeat violent offender hearing, the State presented evidence appellant previously pled guilty and served prison time for a felony of the second degree (felonious assault) which resulted in physical harm to the victim. Whether appellant fired the shot in the earlier incident is irrelevant. The statute only requires the state to prove appellant pled guilty to a felony of the second degree which resulted in physical harm to a victim or complicity therein. We find the facts noted supra, sufficient to support the trial court's finding appellant was a repeat violent offender. Finally, appellant urges this Court to find plain error in the trial court's allowance of Detective Stephenson's hearsay testimony. Even if the hearsay testimony was improperly admitted, we find the State presented sufficient other evidence upon which the trial court could base its decision appellant was a repeat violent offender (i.e., a previous conviction of a felony of the second degree which resulted in physical harm to a victim). For this reason, appellant's second assignment of error is overruled.
 III
In his third assignment of error, appellant maintains he was denied the right to effective assistance of counsel for two reasons. First, appellant's trial counsel failed to move for an acquittal under Crim.R. 29(A) on the charge of having weapons under a disability at the end of the State's case. Second, appellant's trial counsel failed to object to Sheriff Stephenson's hearsay testimony regarding appellant status as a repeat violent offender and then failing to move for an acquittal on that specification pursuant to Crim.R. 29(A) at the repeat violent offender hearing. A claim of ineffective assistance of counsel requires a two-prong analysis. The first inquiry is whether counsel's performance fell below an objective standard of reasonable representation involving a substantial violation of any of defense counsel's essential duties to appellant. The second prong is whether the appellant was prejudiced by counsel's ineffectiveness. Lockhart v. Fretwell (1993), 113 S.Ct. 838,122 L.Ed. 2d 180; Strickland v. Washington (1984), 466 U.S. 668,104 S.Ct. 2052, 80 L.Ed.2d 674; State v. Bradley (1989), 42 Ohio St.3d 136. In determining whether counsel's representation fell below an objective standard of reasonableness, judicial scrutiny of counsel's performance must be highly deferential. Bradley,42 Ohio St. 3d at 142. Because of the difficulties inherent in determining whether effective assistance of counsel was rendered in any given case, a strong presumption exists counsel's conduct fell within the wide range of reasonable, professional assistance. Id. In order to warrant a reversal, the appellant must additionally show he was prejudiced by counsel's ineffectiveness. "Prejudice from defective representation sufficient to justify reversal of a conviction exists only where the result of the trial was unreliable or the proceeding fundamentally unfair because of the performance of trial counsel." State v. Carter (1995), 72 Ohio St.3d 545,558, citing Lockhart v. Fretwell, supra. The United States Supreme Court and the Ohio Supreme Court have held a reviewing court "need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." State v. Bradley, supra at 143, quoting Strickland v. Washington, supra, at 697. Accordingly, we will direct our attention to the second prong of the Strickland test. An attorney is not ineffective for failing to raise an objection which would have been denied. State v. Gibson (1980), 69 Ohio App.2d 91, 95. Based upon our disposition of the first and second assignments of error, we overrule appellant's third assignment of error. As noted, supra, we found there was sufficient evidence upon which the jury could base its decision appellant had a weapon under a disability. Further, notwithstanding the improper allowance of hearsay testimony through Sheriff Stephenson at the repeat violent offender hearing, the State presented sufficient other evidence supporting each element of the repeat violent offender classification. Accordingly, appellant's third assignment of error is overruled.
 IV
In his fourth assignment of error, appellant attacks the trial court's July 16, 1998 Decision and Judgment Entry which denied his motion to suppress. Appellant first asserts the traffic stop was a pretext for gaining access to Mr. Johnson so law enforcement could arrest him. Next, appellant maintains Mr. Haas, appellant's parole officer, acted as a "stalking horse," aiding the police in their investigation. There are three methods of challenging on appeal a trial court's ruling on a motion to suppress. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must determine whether said findings of fact are against the manifest weight of the evidence. See: State v. Fanning (1982), 1 Ohio St.3d 19; State v. Klein (1991), 73 Ohio App.3d 486, State v. Guysinger (1993),86 Ohio App.3d 592. Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. See: State v. Williams (1993), 86 Ohio App.3d 37. Finally, assuming the trial court's findings of fact are not against the manifest weight of the evidence and it has properly identified the law to be applied, an appellant may argue the trial court has incorrectly decided the ultimate or final issue raised in the motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. State v. Curry (1994), 95 Ohio App.3d 93, 96, State v. Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906,908, and State v. Guysinger (1993), 86 Ohio App.3d 592. As the United States Supreme Court held in Ornelas v. U.S. (1996),116 S.Ct. 1657, ". . . as a general matter determinations of reasonable suspicion and probable cause should be reviewed de novo on appeal." The test for a pretextual search is not whether the officer could have validly made the stop but whether in the same circumstances a reasonable officer would have made the stop in the absence of the invalid purpose. State v. Spencer (1991), 75 Ohio App.3d 581,585 (quoting United States v. Smith (C.A. 11, 1986),799 F.2d 704, 709). Appellant first attacks the validity of the parole officer's order to arrest. At the suppression hearing, Mr. Haas, appellant's parole officer, explained why he issued the order to arrest appellant. Mr. Haas testified he received a phone call from the Zanesville Police Department on the evening of the shooting. Sgt. Corey told Mr. Haas appellant was involved in a shooting at Nell's Bar. Eyewitnesses to the incident identified appellant as the shooter. With this information Mr. Haas gave the verbal order to arrest assuming a violation of parole conditions. T. of Suppression Hearing at 29. Mr. Haas testified it was the policy of the parole department to issue such orders upon any assumption a "violation behavior" had occurred. We find Mr. Haas had reasonable grounds to issue an oral order to arrest appellant for a parole violation. These reasonable grounds were based upon information appellant was a suspect in a shooting and witnesses at the scene identified the appellant as the shooter. (See, State v. Thompson (1987), 33 Ohio St.3d 1, 7, where the Supreme Court found reasonable cause existed where an arresting parole officer knew a parolee was a prime suspect in a murder investigation.) Appellant next attacks the traffic stop as a pretext to arrest him. However, in Dayton v. Erickson (1996), 76 Ohio St.3d 3, the Ohio Supreme Court stated: Where a police officer stops a vehicle based on probable cause that a traffic violation has occurred or was occurring, the stop is not unreasonable under the Fourth Amendment to the United States Constitution even if the officer had some ulterior motive for making the stop, such as a suspicion that the violator was engaging in more nefarious criminal activity. (United States v. Ferguson [C.A. 6, 1993], 8 F.3d 385, applied and followed.)
Id. at syllabus.
Officer Scott Johnston of the Zanesville Police Department testified he made the traffic stop because the driver failed to use an indicator light when she turned right. T. of Suppression Hearing at 51. We find the stop of the car was lawful because it was based on a traffic violation. For these reasons, the stop of the car valid and the search subsequent to appellant's arrest was valid. Appellant's fourth assignment of error is overruled.
The judgment of the Muskingum County Court of Common Pleas is affirmed.
By: Hoffman, Wise, P.J. and Gwin, J. concur